# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

CHRIS ARMES, individually and on behalf of )
all others similarly situated, )
)
     Plaintiff, )  No.  08-CV-00244-CNC
)
   v. )  Judge Charles N. Clevert, Jr.
)
SOGRO, INC. d/b/a Budget Host Diplomat Motel, )
)
     Defendant. )

## PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

Plaintiff Chris Armes ("Plaintiff"), by his attorneys, The Consumer Advocacy Center,

P.C. and Markoff Law Firm, LLC, and pursuant to Fed. R. Civ. P. 37(a)(3)(iv), moves this Court

for an order compelling Defendant Sogro, Inc. d/b/a Budget Host Diplomat Motel ("Defendant")

to produce documents responsive to Plaintiff's document requests and requiring Defendant to

pay Plaintiff's reasonable expenses, including attorneys' fees, incurred in making this motion

and for traveling interstate to the document review that Defendant unilaterally and untimely

cancelled. In support of this motion, Plaintiff states as follows:

  1.  On August 20, 2008, Plaintiff issued discovery requests to Defendant, which

included document production requests. A copy of Plaintiff's discovery requests is attached

hereto as <u>Exhibit 1</u> and incorporated herein by reference.

  2.  Defendant did not respond with single document. Rather, on September 18, 2008,

Defendant's counsel, who is located several blocks from Plaintiff's counsel's office in Chicago,

answered that it would "make responsive documents, if any, available for inspection and copying

<u>at its counsel's office at a convenient time</u>." *See* <u>Exhibit 2</u> (emphasis added).

3. However, as opposed to making the responsive documents available to Plaintiff, Defendant's counsel informed Plaintiff's counsel that Plaintiff's counsel would have to travel to Wisconsin to conduct the document review at Defendant's place of business (a motel in Lake Geneva).

4. After months of back and forth about an inspection, on July 1, 2009 the parties finally agreed to an on-site inspection date of July 17, 2009 at 12:00 p.m. A copy of the email exchange confirming the inspection date is attached hereto as Exhibit 3 and incorporated herein by reference.

5. On July 17, 2009, Plaintiff's undersigned counsel, Lance Raphael, traveled from Chicago, IL to Lake Geneva, WI to conduct the document inspection.

6. On July 17, 2009, at 8:59 a.m., Defendant's counsel, David Yuen, sent an email to Plaintiff's counsel advising that the inspection was canceled "due to a personal emergency" of the client. A copy of the email is attached hereto as Exhibit 4 and incorporated herein by reference.

7. At the time Mr. Yuen emailed Plaintiff's counsel about the cancellation, Plaintiff's undersigned counsel was already en route to Wisconsin and did not have access to email. *See* Certification of Plaintiff's Good Faith Non-Judicial Attempts at Discovery Dispute Resolution by Lance Raphael, attached hereto as Exhibit 5.

8. When Plaintiff's undersigned counsel finally spoke with Mr. Yuen that morning at approximately 10:54 a.m. about the cancellation, Plaintiff's undersigned counsel had already arrived in Wisconsin for the document review. During that conversation, Mr. Yuen informed Mr. Raphael that his client's president, Joseph M. Solus, had a personal emergency that

prevented him from personally being present during a document review and that without his presence, the review could not take place. *See* Exhibit 5.

9.     Notwithstanding Defendant's claim that the inspection had to be cancelled due to Defendant's "personal emergency," Plaintiff's undersigned counsel personally observed Defendant's president at Defendant's place of business and conducting business on the morning of July 17, 2009. *See* Exhibit 5.

10.     Clearly, Defendant's excuse for cancelling the inspection, besides being untimely, was false. *See* Exhibit 5.

11.     Another Rule 37 conference was had afterwards, during which Defendant's counsel agreed to have Defendant's documents copied and produced on a disc to Plaintiff's counsel by July 24, 2009. See Exhibit 5.

12.     Neither Defendant nor Defendant's counsel have produced Defendant's responsive documents to Plaintiff's counsel, on a disc or otherwise. See Exhibit 5.

13.     Plaintiff has been attempting for 10 months to obtain Defendant's responsive documents, but has been thwarted with each attempt, the most recent obstacle being a false excuse by Defendant and a breached promise by Defendant's counsel.

14.     Clearly, Plaintiff's counsel has undertaken significant efforts to obtain Defendant's documents and given significant latitude to Defendant, but Defendant has failed to permit inspection of its documents pursuant to Fed. R. Civ. P. 34.

15.     Under Rule 37 of the Federal Rules of Civil Procedure, if a responding party does not cooperate in discovery, the requesting party may move for an order to compel and/or other discovery sanctions.

16.     The full range of sanctions under Fed. R. Civ. P. 37 are proper and should be awarded absent a pre-existing order to compel where a party makes no response to written discovery or answers discovery in such a fashion as to constitute bad faith. *Factory Air Conditioning Corp. v. Westside*, 579 F.2d 334 (5th Cir. 1978) (Discovery sanctions for failure to answer written discovery may include default judgment, striking of pleadings, informing the jury, monetary sanctions, issue preclusion or any other sanctions allowed under Rule 37). Underlining the seriousness of a willful failure to participate in discovery, the drafters of the Rules have required that courts "shall" award "reasonable expenses, including attorney's fees" against the recalcitrant party. Fed. R. Civ. P. 37(d).

17.     Further, under Rule 37, if a responding party does not cooperate, the requesting party may move for an order to compel and/or other discovery sanctions, Fed. R. Civ. P. Rule 37. Sanctions available under Rule 37(b) go beyond the imposition of expenses and may include the entry of a default judgment, an order striking out claims or defenses, and other substantive relief. *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988) at 153; *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 169 F.R.D. 318 (E.D. MI. 1996) at 321.

18.     Rule 37 further permits the court the broad discretion to enter a default. While this represents the most draconian of remedies, it is appropriate where there is a complete failure to cooperate with discovery. Where there is a willful refusal to cooperate with discovery in disregard for the court's order, a default is appropriate. *See Bass v. Jostens*, Inc., 71 F.3d 237, 241 (6th Cir. 1995). Such "a willful violation occurs when there is conscious and intentional failure to comply with the court order." *Bass, id* at 241.

19.     Defendant's conduct stands in disregard of the court rules. There is simply no rational explanation for Defendant's conduct, which includes 1) refusing to timely produce

documents that are admittedly relevant, 2) representing that such production would occur at its Chicago office and then requiring Plaintiff to travel to Wisconsin, 3) scheduling and then unilaterally canceling the document review; 4) misrepresenting the reason for the cancellation of the document review; and 5) promising to produce the documents one week thereafter and then failing to do so. Clearly, Defendant has willfully failed to cooperate in discovery. Likewise, there is no support for the boilerplate objections of the type Defendant has interposed.

WHEREFORE, Plaintiff respectfully requests that this Court grant his Motion and issue an Order compelling the Defendant to: 1) produce all documents responsive to Plaintiff's discovery requests on a disc; and 2) compensate Plaintiff for the time and expense incurred in traveling to Wisconsin for the cancelled document review and for the time and expense incurred in making this Motion; 3) strike Defendant's objections to the Request to Produce; and 4) any other relief that the Court deems appropriate.

CHRIS ARMES, Plaintiff,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 W. Washington St., Ste. 700
Chicago, IL 60602
Tel: 312.782.5808
Fax: 312.377.9930

Paul F. Markoff
Markoff Law Firm, LLC
180 W. Washington St., Ste. 700
Chicago, IL 60602
Tel: 312.726.4162
Fax: 312.277.2507

## CERTIFICATE OF SERVICE

I certify that I served a copy of this ***Plaintiff's Motion to Compel and For Sanctions*** on the following electronically by using the CM/ECF system on this 29th day of July, 2009:

Mr. James K Borcia
David O. Yuen
Tressler, Soderstrom, Maloney & Priess LLP
233 S. Wacker, Ste 2200
Chicago, IL 60606

/s/ Lance A. Raphael

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHRIS ARMES, individually and on behalf )
of all others similarly situated, )
                                 )
                  Plaintiff, )      Case No. 08 C 244
                                 )
     v.                              )      Judge Clevert
                                 )
SOGRO, INC. d/b/a Budget Host Diplomat Motel, )
                                 )
                 Defendant. )

## PLAINTIFF'S FIRST SET OF WRITTEN
## DISCOVERY REQUESTS (INTERROGATORIES, REQUESTS
## FOR PRODUCTION AND REQUESTS FOR ADMISSIONS OF FACT)

Plaintiff Chris Armes requests that Sogro, Inc. d/b/a Budget Host Diplomat Motel

("Defendant") answer the following interrogatories, requests for production and requests for

admissions of fact in the manner and within the time stated in Fed. R. Civ. P. 33, 34 and 36 or

otherwise ordered by the Court.

### Definitions

As used herein, the words and phrases set out below have the following meanings:

1. "Business Association" shall mean any formal or informal group, entity or association that has the purpose of promoting and/or advising businesses.

2. "Business Publication" shall mean any written or electronic publication related to operating a business.

3. "Card" shall mean a debit or credit card.

4. "Card Number" shall mean the account number that appears on the front of Card.

5. "Cardholder" shall mean an authorized user of a Card.

6. "Card Issuer" shall mean a financial institution that issues Cards.

7. "Complaint" shall mean the most-recently filed complaint in this lawsuit.

8. "DSS" shall mean the Payment Card Industry Data Security Standard.

9. "Date" shall mean the exact day, month and year, if ascertainable, or, if not, the best approximation thereof.

10. "Defendant", "You" and/or "Your" shall mean defendant Sogro, Inc. d/b/a Budget Host Diplomat Motel and its present and former attorneys, officers, directors, managers, members, employees, agents, accountants, advisors, parents, subsidiaries, affiliates, representatives, and any other person acting or purporting to act on its behalf.

11. "Document" or "documents" shall mean every original, and every copy of any original or copy which differs in any way from any original, of every writing or recording of every kind or description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatever, including without limitation, letters, facsimile transmissions, books, records, reports, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, tabulations, bulletins, press releases, computer programs, data contained in computers, computer disks or diskettes, data sheets, analyses, summaries, ledgers, accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registrations, solicitations, minutes, stock ledgers, stock certificates, licenses, permits, calendars, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agendas, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, studies, instruments, assignments, applications, offers, acceptances, proposals, financing statements, documents of title, forecasts or appraisals, purchase orders, invoices, orders or acknowledgments, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, tapes and records, maps, plats, surveys, drawings, sketches, graphs, charts, plans, state and federal governmental hearings and reports, laboratory or engineering reports, correspondence, communications, electronic mail, voicemail, telegrams, telexes, cables, memoranda, notes, notebooks, worksheets, reports, lists, note charts, summaries or records of telephone conversations, summaries or records of personal conversations, interviews, records or minutes of meetings or negotiations, opinions or reports of consultants, accounting of any kind, work papers and transcripts, and generally should be given the broadest possible meaning under the Federal Rules of Civil Procedure.

12. "Employee" shall mean, in addition to an actual employee, any form of representative, consultant, engineer, agent, consulting agent or independent contractor or any other person acting, or purporting to act, on behalf of the "employer" or principal.

13. "Expiration Date" shall mean the date on which a Card expires.

14. "FACTA" shall mean the Fair and Accurate Credit Transactions Act 0f 2003 (Pub. L. 108-159, 111 Stat. 1952), which amended the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.*

15. "Identify" shall mean:

2

(a)     as to an individual, stating his or her:

>    (1)     full name customarily used at the present time and any other full names;
>    (2)     present or last known residence address; and
>    (3)     name and address of his or her current employer, current employer's business, and job title, status or classification with current employer.

(b)     as to any person other than an individual, stating:

>    (1)     its legal name and any other names used by it; and
>    (2)     the form or manner of its organization (e.g., partnership, corporation, sole proprietorship, etc.).

(c)     as to a conversation, stating:

>    (1)     the persons who were involved in the conversation;
>    (2)     all persons who were present when the conversation took place;
>    (3)     where the conversation occurred;
>    (4)     when the conversation occurred;
>    (5)     the general topic or topics of the conversation; and
>    (6)     as close to verbatim as possible the conversation.

16. "MasterCard" shall mean the membership corporation of financial institutions that issue MasterCard cards and/or sign Merchants to accept MasterCard cards for payment of goods or services.

17. "Merchant" shall mean any business that is authorized to accept Cards for the payment of goods or services.

18. "Merchant Agreement" shall mean the contract between a Merchant and a Merchant Bank under which the Merchant participates in a payment system (e.g., Visa, MasterCard).

19. "Merchant Bank" shall mean a financial institution and/or processor that enters into agreements with Merchants to accept Cards as payment for goods or services.

20. "Oral communication" shall mean any utterance heard by another person, whether in person, by telephone, or otherwise, as well as all mechanical or electronic sound recordings or transcripts thereof.

21. "PCI" shall mean the Payment Card Industry.

22. "Person" or "persons" shall mean, without limiting the generality of its meaning, every natural person, corporate entity, partnership, sole proprietorship, limited liability company, joint venture, association, trust or any other business, social, political or governmental organization, entity or arrangement of whatever nature, whether real, juridical, incorporated or

3

unincorporated, encompassed within the usual and customary meaning of "person" or "persons," or otherwise encompassed within this definition.

23. "Plaintiff" shall mean plaintiff Chris Armes and his present and former attorneys, agents, accountants, advisors, representatives and any other person acting or purporting to act on her behalf.

24. "POS Terminal", also known as point-of-sale terminal, shall mean the electronic device used for authorizing and processing Transactions at the point of sale.

25. "Related to" or "relating to" shall mean directly or indirectly mentioning or describing, identifying, referring to, pertaining to, being connected with, or reflecting upon a stated subject matter.

26. "Sales Receipt" shall mean the electronically-printed record of a Transaction and issued to a Cardholder.

27. "SSC" shall mean Payment Card Industry Security Standards Council.

28. "Trade Association" shall mean any formal or informal group, entity or association that has the purpose of promoting and/or advising your industry.

29. "Trade Publication" shall mean any written or electronic publication related to your industry.

30. "Transaction" shall mean the act between a Cardholder and a Merchant that results in the sale of goods or services.

31. "Truncation Requirements" shall mean the limitation on printing debit or credit card numbers and expiration dates on electronically-printed Sales Receipts, as set forth in 15 U.S.C. § 1681c(g)(1).

32. "Visa" shall mean the membership corporation of financial institutions that issue Visa cards and/or sign Merchants to accept Visa cards for payment of goods or services.

33. "Written communication" shall mean any document that conveys a thought, message or any other information, including, but not limited to letters, memoranda, reports, invoices, purchase orders and electronic transmissions.

### Instructions

In construing these requests:

A. The singular shall include the plural and the plural shall include the singular.

B. A masculine, feminine or neuter pronoun shall not exclude the other genders.

4

C. "And" as well as "or" shall be construed either disjunctively, or conjunctively, as necessary to bring within the scope of a request any document that would otherwise be construed as outside the scope of a request and to bring within the scope of an interrogatory any information that would otherwise be construed as outside the scope of a request.

D. With respect to any documents which are withheld on any claim of privilege, you are requested to provide the following information as to each such document:

    (1)    the date appearing on the document, or if no such date appears, the date on which the document was created;

    (2)    the name of its author, or the addresser and/or sender in the case of letters, office memoranda, or correspondence;

    (3)    the name of the person to whom the document was sent;

    (4)    its type (e.g. letter, memorandum, etc.), nature (e.g., typewritten, long-hand, etc.) and number of pages; and

    (5)    a brief description of the subject matter of the documents.

E. All objections or answers that fail or refuse to respond fully to any request on the ground of any claim or privilege of any kind whatever shall:

    (1)    state the nature of the claim of privilege and the facts relied upon in support of the claim of privilege;

    (2)    identify all documents related to the claim of privilege; and

    (3)    identify all persons having knowledge of any facts relating to the claim of privilege.

## Time Period Covered By This Request

Unless otherwise indicated, each of the following requests information for the period December 4, 2003 to the date on which they are answered through the date on which they are answered.

## Interrogatories

**Interrogatory No. 1:**    Identify the person(s) who provided information in responding to these interrogatories and the separate requests for admissions of fact, and identify the particular interrogatory(ies) and/or request(s) for admission of fact for which each person provided information.

**Answer:**

**Interrogatory No. 2:**    Identify each person with knowledge relating to the claims in Plaintiff's Complaint in this case and/or defenses thereto and for each person, identify the subject(s) on which each person has knowledge.

**Answer:**

5

**Interrogatory No. 3:**  State the factual basis, in detail, for Defendant's denial of liability to Plaintiff in this case.

  **Answer:**

**Interrogatory No. 4:**  State the factual basis, in detail, for each of Defendant's affirmative defenses in this case.

  **Answer:**

**Interrogatory No. 5:**  State the factual basis, in detail, for Defendant's denial that Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint, should be certified.

  **Answer:**

**Interrogatory No. 6:**  Since December 4, 2003, identify the make and model number of each POS Terminal from which you have issued Sales Receipts and for each, identify the date you began using it, the date(s) you upgraded any applicable software, the date(s) it was serviced and/or repaired, the date on which you ceased using it and the vendor from which/whom you obtained it.

  **Answer:**

**Interrogatory No. 7:**  Since December 4, 2003, identify each Merchant Bank you have engaged to process Transactions and for each, identify the date on which you engaged it and the date on which you disengaged from it.

  **Answer:**

**Interrogatory No. 8:**  Identify all oral and/or written communications you have received related to Truncation Requirements and/or DSS.

  **Answer:**

**Interrogatory No. 9:**  Identify all Trade Associations and Business Associations with which you have been affiliated and, for each, identify the date your affiliation began and the date your affiliation ended.

  **Answer:**

**Interrogatory No. 10:**  Identify all Trade Publications and Business Publications to which you have subscribed and, for each, identify the date your subscription started and the date your subscription ended.

6

**Answer:**

**Interrogatory No. 11:** State, in detail, your procedures, if any, for verifying that you are compliant with the Truncation Requirements and identify any modifications to the procedures since December 4, 2003.

**Answer:**

**Interrogatory No. 12:** Identify the person(s) on your behalf responsible for verifying your compliance with the Truncation Requirements, including the date(s) each person(s) was/is responsible for such verification.

**Answer:**

**Interrogatory No. 13:** From December 4, 2003 to the date the Complaint was filed, describe in detail all action you took to be compliant with the Truncation Requirements and, for each, state the date on which the action was taken.

**Answer:**

**Interrogatory No. 14:** State the date on which you became aware of the Truncation Requirements.

**Answer:**

**Interrogatory No. 15:** State the date on which you became aware that you did not meet the Truncation Requirements.

**Answer:**

**Interrogatory No. 16:** State the date on which you became compliant with the Truncation Requirements.

**Answer:**

**Interrogatory No. 17:** State the number of Transactions at your establishment from December 4, 2006 to April 30, 2007.

**Answer:**

**Interrogatory No. 18:** State the number of Transactions at your establishment from December 4, 2006 to the date the Complaint was filed.

**Answer:**

7

**Interrogatory No. 19:**     Since December 4, 2003, identify all persons that have offered or solicited to provide (by sale or otherwise) you with a POS Terminal and/or software upgrade(s) to ensure your compliance with the Truncation Requirements.

**Answer:**

**Interrogatory No. 20:**     Describe your document retention and destruction policy(ies), stating the date(s) on which changes were made, if any, and identifying what those changes were.

**Answer:**

**Interrogatory No. 21:**     For the period December 4, 2006 through the date the Complaint was filed, identify what Cardholder information you gathered related to Transactions at your establishment, the duration for which you maintain that information and whether that information is currently retrievable electronically.

**Answer:**

**Interrogatory No. 22:**     Since December 4, 2006, identify all persons to whom you issued Sales Receipts that included full Card Numbers.

**Answer:**

**Interrogatory No. 23:**     Identify each person whom you expect to call at trial and state the subject matter on which such person is expected to testify.

**Answer:**

**Interrogatory No. 24:**     If any of your response(s) to the included Requests for Admission is/are anything other than an unqualified admission(s), state the basis, in detail, for your response(s).

**Answer:**

### Requests to Produce

1.     All documents related to Plaintiff.

2.     All documents consulted in responding to these Written Discovery Requests.

3.     All documents related to the purchase, lease, installation, inspection, maintenance, modification, replacement and/or removal of your POS Terminal and/or its software.

8

4. All documents related to your outsourcing, if any, of the purchase, lease, installation, inspection, maintenance, modification, replacement and/or removal of your POS Terminal and/or its software.

5. All documents related to Truncation Requirements.

6. All documents related to FACTA.

7. All documents related to the SSC.

8. All documents related to DSS.

9. All documents related to Visa.

10. All documents related to MasterCard.

11. All documents related to American Express.

12. All documents related to Discover.

13. All documents related to any Merchant Agreement to which you have been a party.

14. All documents related to all Trade Associations with which you have been associated.

15. All documents related to all Trade Publications to which you have subscribed.

16. All documents related to all Business Associations with which you have been associated.

17. All documents related to all Business Publications to which you have subscribed.

18. All documents related to any offer or solicitation to provide (by sale or otherwise) you with a POS Terminal and/or software upgrade(s) to ensure your compliance with the Truncation Requirements.

19. For the time period one December 4, 2006 through the date on which the Complaint was filed, all documents identifying all Transactions at your establishment by date, time and type.

20. For the time period December 4, 2006 through the date on which the Complaint was filed, all documents identifying the number of Transactions at your establishment.

21. All documents supporting your denial of liability in this case.

9

22. All documents supporting your affirmative defenses in this case.

23. All documents supporting your denial that Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint, should be certified.

24. For Transactions at your establishment from December 4, 2006 through the date on which the Complaint was filed, all Sales Receipts that included full Card Numbers.

25. For Transactions at your establishment from December 4, 2006 through the date on which the Complaint was filed, all documents identifying Cardholders to whom you issued Sales Receipts that included full Card Numbers.

26. All documents related to your procedures, if any, for verifying compliance with the Truncation Requirements.

27. All of your organizational charts.

28. All documents related to your document retention and destruction policy(ies).

29. All exhibits you intend to use at trial.

30. All documents related to any insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment, if any, that may be entered against you in this case.

31. All documents related to any indemnification and/or contribution agreement under which any person may be liable to indemnify you, in whole or in part, or contribute to you for payments made to satisfy a judgment, if any, that may be entered against you in this case.

### Requests For Admission

**Request for Admission No. 1:**    Between December 4, 2006 and April 30, 2007, you

provided Sales Receipts.

**Response:**

**Request for Admission No. 2:**    Between December 4, 2006 and April 30, 2007, you

provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 3:**    From December 4, 2006 to March 17, 2008, you

provided Sales Receipts that included full Card Numbers.

10

**Response:**

**Request for Admission No. 4:** From December 4, 2006 to April 30, 2007, you provided more than 40 Sales Receipts.

**Response:**

**Request for Admission No. 5:** From December 4, 2006 to April 30, 2007, you provided more than 40 Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 6:** From December 4, 2006 to April 30, 2007, you provided more than 100 Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 7:** From December 4, 2006 to March 17, 2008, you provided more than 1000 Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 8:** On April 30, 2007, you provided Sales Receipts from a POS Terminal.

**Response:**

**Request for Admission No. 9:** From December 4, 2006 to April 30, 2007, you provided Sales Receipts from a POS Terminal.

**Response:**

**Request for Admission No. 10:** From December 4, 2006 to April 30, 2007, you provided all of your Sales Receipts from the same POS Terminal.

**Response:**

11

**Request for Admission No. 11:** From December 4, 2006 to March 17, 2008, you provided all of your Sales Receipts from the same POS Terminal.

**Response:**

**Request for Admission No. 12:** Your POS Terminal was first put into use by you on or after January 1, 2005.

**Response:**

**Request for Admission No. 13:** Your POS Terminal was first put into use by you before January 1, 2005.

**Response:**

**Request for Admission No. 14:** Prior to December 4, 2006, you were aware of the Truncation Requirements.

**Response:**

**Request for Admission No. 15:** As of December 4, 2006, you were aware that you were prohibited from providing Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 16:** Prior to December 4, 2006, your Merchant Bank advised you that you would be prohibited from providing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 17:** Prior to December 4, 2006, Visa advised you that you would be prohibited from providing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

12

**Request for Admission No. 18:** Prior to December 4, 2006, MasterCard advised you that you would be prohibited from providing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 19:** Prior to December 4, 2006, one or more Trade Associations advised you that you would be prohibited from providing Sales Receipts that included full Card Numbers as of December 4, 2006.

**Response:**

**Request for Admission No. 20:** On April 30, 2007, your POS Terminal had the capacity to provide Sales Receipts that did not include full Card Numbers.

**Response:**

**Request for Admission No. 21:** From December 4, 2006 to April 30, 2007, your POS Terminal had the capacity to provide Sales Receipts that did not include full Card Numbers.

**Response:**

**Request for Admission No. 22:** As of April 30, 2007, you did not meet the Truncation Requirements.

**Response:**

**Request for Admission No. 23:** As of April 30, 2007, you knew that you did not meet the Truncation Requirements.

**Response:**

**Request for Admission No. 24:** As of April 30, 2007, you knew that you were prohibited from including full Card Numbers on Sales Receipts.

**Response:**

13

**Request for Admission No. 25:** On April 30, 2007, you willfully provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 26:** On April 30, 2007, you knowingly provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 27:** On April 30, 2007, you recklessly provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 28:** From December 4, 2006 to March 17, 2008, you willfully provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 29:** From December 4, 2006 to March 17, 2008, you knowingly provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 30:** From December 4, 2006 to March 17, 2008, you recklessly provided Sales Receipts that included full Card Numbers.

**Response:**

**Request for Admission No. 31:** The number of putative class members in Plaintiff's Class, as defined in paragraph 15 of the Complaint, is so numerous that joinder of all putative class members is impracticable.

**Response:**

14

**Request for Admission No. 32:** The number of putative class members in Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint, satisfies the numerosity requirement of Federal Rule of Civil Procedure 23.

**Response:**

**Request for Admission No. 33:** The questions of law and fact affecting Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint, are common to all putative members of the Class.

**Response:**

**Request for Admission No. 34:** The questions of law and fact affecting Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint, predominate over any questions affecting only individual putative members of the Class.

**Response:**

**Request for Admission No. 35:** Plaintiff's claims are typical of the putative members of Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint.

**Response:**

**Request for Admission No. 36:** Plaintiff is an adequate class representative for Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint.

**Response:**

**Request for Admission No. 37:** You have no evidence that Plaintiff is not an adequate class representative for Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint.

**Response:**

**Request for Admission No. 38:** Plaintiff's counsel in this case is adequate class counsel.

**Response:**

**Request for Admission No. 39:** You have no evidence that Plaintiff's counsel in this case is not adequate class counsel.

**Response:**

CHRIS ARMES, Plaintiff,

By: _____
Paul F. Markoff, One Of His Attorneys

Dated: August 20, 2008

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.782.5808

Paul F. Markoff
Markoff Law Firm, LLC
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.726.4162

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing *Plaintiff's First Set of Written Discovery Requests (Interrogatories, Requests for Production and Requests for Admissions of Fact)* was served upon the following by electronic and regular mail, postage prepaid, on this 20th day of August, 2008:

James K. Borcia
Tressler Soderstrom Maloney & Priess, LLP
233 S. Wacker Dr., 22nd Fl.
Chicago, IL 60606
jborcia@tsmp.com

Paul F. Markoff

# EXHIBIT 2

**UNITED STATED DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

CHRIS ARMES, individually and on behalf of all )
others similarly situated, )
             )
         Plaintiff, )
             )
v.              )    Case No. 08-CV-244
             )
SOGRO, INC. d/b/a BUDGET HOST DIPLOMAT )
MOTEL, )
             )
         Defendant. )
             )

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Defendant, Sogro, Inc. ("Sogro"), by and through its attorneys, Tressler, Soderstrom,

Maloney & Priess, LLP, hereby submits its Responses to Plaintiff's First Set of Requests for

Production.

### GENERAL OBJECTIONS

Defendant hereby incorporates by reference, as if fully set forth therein, each of the

following General Objections in its response to each separate paragraph in the requests for

production:

  1.  Defendant objects to producing any information in response to the Requests for

Production that is protected by the attorney-client privilege, the work-product doctrine or any

other applicable protection, restriction or immunity from discovery.

  2.  Defendant objects to the requests for production to the extent that they attempt to

impose obligations upon Defendant that are inconsistent with and/or in addition to those imposed

by the Federal Rules of Civil Procedure, the local rules, applicable case law, statutes governing

the proper scope and extent of discovery, any orders issued by the Court, and any rulings made by the Court.

4.     Defendant objects to the requests for production to the extent that the information sought is a matter of public record, which is equally accessible and available to Plaintiff, on the grounds that providing such information would impose an unreasonable burden and expense upon Defendants.

5.     Defendant objects to the Requests for Production to the extent they seek information not in the possession, custody or control of Defendant.

Defendant's investigation of the facts concerning this action is continuing.    The Responses to the Requests for Production, therefore, are subject to all stated objections and are based only upon such information as is presently available to, or known to, Defendant. Defendant reserves the right to modify or supplement, to the extent required by the Federal Rules of Civil Procedure or the Local Rules, any and all responses herein as additional facts are ascertained, as additional documents are obtained, and as additional analysis and contentions are formulated.

## DOCUMENT REQUESTS

1.     All documents related to Plaintiff.

**Response:**     Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.

2.     All documents consulted in responding to these Written Discovery Requests.

**Response:**     Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.

3.     All documents related to the purchase, lease, installation, inspection, maintenance, modification, replacement and/or removal of your POS Terminal and/or its software.

**Response:** Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


4.    All documents related to your outsourcing, if any, of the purchase, lease, installation, inspection, maintenance, modification, replacement and/or removal of your POS Terminal and/or its software.

**Response:** Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


5.    All documents related to Truncation Requirements.

**Response:** None.


6.    All documents related to FACTA.

**Response:** None.


7.    All documents related to the SSC.

**Response:** None.


8.    All documents related to DSS.

**Response:** None.


9.    All documents related to Visa.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.


10.   All documents related to MasterCard.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.


11.   All documents related to American Express.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.

 12. All documents related to Discover.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.

 13. All documents related to any Merchant Agreement to which you have been a party.

**Response:** Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.

 14. All documents related to all Trade Associations with which you have been associated.

**Response:** Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.

 15. All documents related to all Trade Publications to which you have subscribed.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.

 16. All documents related to all Business Associations with which you have been associated.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.

 17. All documents related to all Business Publications to which you have subscribed.

**Response:** Objection. This interrogatory is vague, overly broad, unduly burdensome, and is not calculated to lead to the discovery of admissible evidence.

 18. All documents related to any offer or solicitation to provide (by sale or otherwise) you with a POS Terminal and/or software upgrade(s) to ensure your compliance with the Truncation Requirements.

**Response:** None.

19.     For the time period on December 4, 2006 through the date on which the Complaint was filed, all documents identifying all Transactions at your establishment by date, time and type.

**Response:**     Objection. This interrogatory is vague, overly broad, and unduly burdensome.


20.     For the time period December 4, 2006 through the date on which the Complaint was filed, all documents identifying the number of Transactions at your establishment.

**Response:**     Objection. This interrogatory is vague, overly broad, and unduly burdensome.


21.     All documents supporting your denial of liability in this case.

**Response:**     Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


22.     All documents supporting your affirmative defenses in this case.

**Response:**     Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


23.     All documents supporting your denial that Plaintiff's proposed Class, as defined in paragraph 15 of the Complaint, should be certified.

**Response:**     Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


24.     For Transactions at your establishment from December 4, 2006 through the date on which the Complaint was filed, all Sales Receipts that included full Card Numbers.

**Response:**     Objection. This interrogatory is vague, overly broad, and unduly burdensome.


25.     For Transactions at your establishment from December 4, 2006 through the date on which the Complaint was filed, all documents identifying Cardholders to whom you issued Sales Receipts that included full Card Numbers.

**Response:**     Objection. This interrogatory is vague, overly broad, and unduly burdensome.

26.    All documents related to your procedures, if any, for verifying compliance with the Truncation Requirements.

**Response:**    None.


27.    All of your organizational charts.

**Response:**    None.


28.    All documents related to your document retention and destruction policy(ies).

**Response:**    None.


29.    All exhibits you intend to use at trial.

**Response:**    Investigation continues.


30.    All documents related to any insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment, if any, that may be entered against you in this case.

**Response:**    Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


31.    All documents related to any indemnification and/or contribution agreement under which any person may be liable to indemnify you, in whole or in part, or contribute to you for payments made to satisfy a judgment, if any, that may be entered against you in this case.

**Response:**    Defendant will make responsive documents, if any, available for inspection and copying at its counsel's office at a convenient time.


SOGRO, INC.

By:_____

One of Its Attorneys

James K. Borcia
David O. Yuen
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000

# EXHIBIT 3

# Allison Krumhorn

**From:** Allison Krumhorn
**Sent:** Wednesday, July 01, 2009 12:23 PM
**To:** 'David O. Yuen'
**Subject:** RE: Armes v. Sogro

12 p.m. is fine. Thanks though.


```
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite   700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or
previous e-mail messages attached to it may contain confidential information that
is legally privileged. If you are not the intended recipient, or a person
responsible for delivering it to the intended recipient, you are hereby notified
that any disclosure, copying, distribution or use of any of the information
contained in or attached to this transmission is STRICTLY PROHIBITED. If you have
received this transmission in error, please immediately notify me by reply e-mail,
by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and
destroy the original transmission and its attachments without reading or saving in
any manner. The CAC is a private law firm. It is not, and is not affiliated with,
any not-for-profit, governmental or public interest organization.
```

**From:** David O. Yuen [mailto:dyuen@tsmp.com]
**Sent:** Wednesday, July 01, 2009 12:15 PM
**To:** Allison Krumhorn
**Subject:** RE: Armes v. Sogro

I can do as early as 1030 on that date if you like

**From:** Allison Krumhorn [mailto:allison@caclawyers.com]
**Sent:** Wednesday, July 01, 2009 11:11 AM
**To:** David O. Yuen
**Cc:** James K. Borcia
**Subject:** RE: Armes v. Sogro

July 17, 2009 at 12 p.m. it is. To confirm, the address is 1060 S. Wells, Lake Geneva, WI 53147.


```
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite   700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
```

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by reply e-mail, by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and destroy the original transmission and its attachments without reading or saving in any manner. The CAC is a private law firm. It is not, and is not affiliated with, any not-for-profit, governmental or public interest organization.

**From:** David O. Yuen [mailto:dyuen@tsmp.com]
**Sent:** Tuesday, June 30, 2009 3:47 PM
**To:** Allison Krumhorn
**Subject:** RE: Armes v. Sogro

July 17?

**From:** Allison Krumhorn [mailto:allison@caclawyers.com]
**Sent:** Wednesday, June 24, 2009 12:21 PM
**To:** David O. Yuen
**Subject:** RE: Armes v. Sogro

Can't do it then, Lance is out of town.


Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite   700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by reply e-mail, by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and destroy the original transmission and its attachments without reading or saving in any manner. The CAC is a private law firm. It is not, and is not affiliated with, any not-for-profit, governmental or public interest organization.

**From:** David O. Yuen [mailto:dyuen@tsmp.com]
**Sent:** Wednesday, June 24, 2009 11:44 AM
**To:** Allison Krumhorn
**Subject:** RE: Armes v. Sogro

How does July 10 starting any time after 10:30 a.m. work?

**From:** Allison Krumhorn [mailto:allison@caclawyers.com]

**Sent:** Monday, June 22, 2009 4:45 PM
**To:** David O. Yuen
**Subject:** RE: Armes v. Sogro

Let's see if we can work out a date on a Monday at 9:30 a.m. or a Friday at 12 p.m.

```
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite    700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
```

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by reply e-mail, by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and destroy the original transmission and its attachments without reading or saving in any manner. The CAC is a private law firm. It is not, and is not affiliated with, any not-for-profit, governmental or public interest organization.

**From:** David O. Yuen [mailto:dyuen@tsmp.com]
**Sent:** Monday, June 22, 2009 4:33 PM
**To:** Allison Krumhorn
**Subject:** RE: Armes v. Sogro

A 9:30 start time will severely limit the number of available dates as I am usually in court in the morning. The review should not take very long since each of the documents are going to be similar other than the individual's information.

**From:** Allison Krumhorn [mailto:allison@caclawyers.com]
**Sent:** Monday, June 22, 2009 4:23 PM
**To:** David O. Yuen
**Subject:** RE: Armes v. Sogro

Lance is on trial next week. Please let me know other dates. Also, the document review needs to start no later than 9:30 a.m.

```
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite    700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
```

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified

that any disclosure, copying, distribution or use of any of the information
contained in or attached to this transmission is STRICTLY PROHIBITED. If you have
received this transmission in error, please immediately notify me by reply e-mail,
by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and
destroy the original transmission and its attachments without reading or saving in
any manner. The CAC is a private law firm. It is not, and is not affiliated with,
any not-for-profit, governmental or public interest organization.

**From:** David O. Yuen [mailto:dyuen@tsmp.com]
**Sent:** Monday, June 22, 2009 4:22 PM
**To:** Allison Krumhorn
**Subject:** RE: Armes v. Sogro

The next date we have available for the doc review is June 30 at noon.

**From:** Allison Krumhorn [mailto:allison@caclawyers.com]
**Sent:** Monday, June 22, 2009 10:02 AM
**To:** David O. Yuen
**Subject:** RE: Armes v. Sogro

We need to set up a time for the document review as well as the rescheduling of the deposition of Mr. Solus.

```
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite   700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
```
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or
previous e-mail messages attached to it may contain confidential information that
is legally privileged. If you are not the intended recipient, or a person
responsible for delivering it to the intended recipient, you are hereby notified
that any disclosure, copying, distribution or use of any of the information
contained in or attached to this transmission is STRICTLY PROHIBITED. If you have
received this transmission in error, please immediately notify me by reply e-mail,
by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and
destroy the original transmission and its attachments without reading or saving in
any manner. The CAC is a private law firm. It is not, and is not affiliated with,
any not-for-profit, governmental or public interest organization.

**From:** David O. Yuen [mailto:dyuen@tsmp.com]
**Sent:** Friday, June 19, 2009 3:35 PM
**To:** Allison Krumhorn
**Cc:** James K. Borcia
**Subject:** RE: Armes v. Sogro

Allison

Attached are samples of the types of documents our client has.

Dave

**From:** Allison Krumhorn [mailto:allison@caclawyers.com]
**Sent:** Thursday, June 18, 2009 2:31 PM
**To:** James K. Borcia; David O. Yuen; Lance Raphael; Paul Markoff
**Subject:** Armes v. Sogro

Dear Mr. Borcia:

At the June 22, 2009 document inspection, Plaintiff expects to view all documents responsive to his First Set of Document Production Requests. As a courtesy, prior to Monday, please let me know what categories of documents are located at the Defendant's hotel. Thanks.


Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite   700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by reply e-mail, by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and destroy the original transmission and its attachments without reading or saving·in any manner. The CAC is a private law firm. It is not, and is not affiliated with, any not-for-profit, governmental or public interest organization.

# EXHIBIT 4

# Allison Krumhorn

**From:** David O. Yuen [dyuen@tsmp.com]
**Sent:** Friday, July 17, 2009 8:59 AM
**To:** Allison Krumhorn; James K. Borcia
**Cc:** 'paul@markofflawfirm.com'; Lance Raphael
**Subject:** Re: Armes v. Sogro

My client just called me to say he has to cancel the document review today due to a personal emergency. He said is his available to reschedule any day next week. I apologize for the late notice

---

**From:** Allison Krumhorn
**To:** David O. Yuen; James K. Borcia
**Cc:** Paul Markoff ; Lance Raphael
**Sent:** Mon Jul 06 14:10:27 2009
**Subject:** Armes v. Sogro

Attached please find Wisconsin Innkeeper's Association, Inc.'s Response to Plaintiff's subpoena.

```
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
A private law firm devoted to protecting consumers' rights
180 West Washington
Suite   700
Chicago, IL 60602-2318
Phone: 312-782-5808
Fax: 312-377-9930
```

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by reply e-mail, by forwarding this to lar@caclawyers.com or by telephone at 312-782-5808 and destroy the original transmission and its attachments without reading or saving in any manner. The CAC is a private law firm. It is not, and is not affiliated with, any not-for-profit, governmental or public interest organization.

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

CHRIS ARMES, individually and on behalf of )
all others similarly situated, )
                          )
              Plaintiff, )    No.    08-CV-00244-CNC
                          )
       v. )    Judge Charles N. Clevert, Jr.
                          )
SOGRO, INC. d/b/a Budget Host Diplomat Motel, )
                          )
              Defendant. )

## <u>CERTIFICATION OF PLAINTIFFS' GOOD FAITH, NON-JUDICIAL ATTEMPTS AT DISCOVERY DISPUTE RESOLUTION</u>

       1.      During numerous telephone calls and e-mail exchanges, Plaintiff's counsel made every reasonable attempt to work out the production of documents requested in discovery.

       2.      Rather than 1) producing the documents at Defendant's counsels' Chicago offices for inspection and copying, or alternatively; 2) producing the records at Plaintiff's Chicago office for scanning and free copying, or alternatively; 3) producing electronically scanned copies from Defendant's counsels' Chicago office, Defendant's counsel insisted that Plaintiff's counsel go to Defendant's location in Wisconsin to view the responsive documents.[1]

       3.      Defendant's counsel, David O. Yuen, also insisted that any document review had to be during a time when both he and his client's president were both personally available, and that no other representative from Defendant's office or from the Defendant could accommodate the review, and that both had to be present.

       4.      Mr. Yuen also insisted that any document review take place during a weekday.

       5.      With these limitations in mind, Plaintiff's counsel sought to schedule a date for

the document review over a number of months, which was eventually scheduled to take place on July 17, 2009 at 12:00 p.m.

6.     I was Plaintiff's attorney that was to conduct the document review. As there was significant construction en route from Chicago to Lake Geneva, I left Chicago shortly after 8:00 a.m. on July 17, 2009. When I arrived in Wisconsin shortly after 10:30 a.m., I learned from my office that David O. Yuen attempted to cancel the document review due to a personal emergency of his client. I called Mr. Yuen from my cell phone at approximately 10:41 a.m. and left a message.

7.     Mr. Yuen called me back at approximately 10:54 a.m. and we engaged in a Rule 37 conference over the telephone.

8.     Mr. Yuen informed me that his client's president, Joseph M. Solus, had a personal emergency that prevented him from personally attending the document review, and that without his presence, a review could not take place with just Mr. Yuen.

9.     I specifically asked if we could conduct the review without Mr. Solus; the answer was no. I informed Mr. Yuen that making me go to Wisconsin for a document review that could still be performed in the absence of Defendant's president was a waste of attorney time. I advised that I would wait for Mr. Yuen to go to Wisconsin that morning so that the Plaintiff was not needlessly expensed.

10.    I further informed Mr. Yuen that I would wait to meet at the Defendant's location at the appointed time and that he should call his client to see if he would change his mind regarding whether the document review could occur with just Plaintiff's and Defendant's respective counsel and/or another one of Defendant's employees.

---

[1]     Tellingly, Defendant insisted that any documents selected to be copied would still have to go to a third party copy center which would charge both the Plaintiff and Defendant to make copies at substantially greater cost

11.      Shortly after 12:00 p.m., I observed the Defendant's parking lot and saw that there were approximately 4 cars in the lot.  I observed two persons who appeared to be from the hotel (a man and a woman) assisting a family with their luggage into the hotel.

12.      I waited to see if David O. Yuen would appear.  At about 12:30 p.m., I parked in the parking lot of the hotel and entered the hotel lobby.

13.      In the lobby of the hotel was a man behind the front desk who appeared to be resting in his chair with his head down on his folded arms.

14.      When I approached the front desk, this man raised his head and asked "can I help you."  In response, I asked for Mr. Yuen.

15.      He responded that he did not know who that was and began to look him up on the hotel register.

16.      I then informed him that Mr. Yuen was not a hotel guest, but one of the lawyers for the hotel and I want to see if he was there for the meeting.

17.      At this point, the man became visibly angry and asked me who I was.

18.      I informed him that I was the lawyer for the Plaintiff in the lawsuit against the hotel.

19.      The man then identified himself as the owner of the hotel and said, "Get out of here. You get off of my property."  He further stated that "I don't have time for this lawsuit. I am busy.  You will have to speak with my lawyer."

20.      I asked the owner if we could call his lawyer to see if he was on his way.  He said no and then I left the hotel.

21.      At approximately 12:37 p.m., I called Mr. Yuen's office from the parking lot of the hotel and left a message to call me back.

than the cost of Plaintiff's counsel scanning the documents in-house.

22.    At 12:39 p.m. Mr. Yuen called me back.

23.    As I was on the phone with Mr. Yuen, the owner came outside to the parking lot and told me "get off my property."

24.    I told the owner that I was on the phone with Mr. Yuen, the lawyer for the hotel, and that he could speak with him.

25.    The owner then came up to me in the parking lot, and in a very threatening manner, told me "get off my property." I then left.

26.    I then asked Mr. Yuen why he did not come to the meeting. He repeated that his client had a personal emergency that prevented him from being personally present. (Mr. Yuen was apparently without knowledge that his client had just chased me from the parking lot.)

27.    I told Mr. Yuen that I had just been yelled at out in the parking lot by his client and that when I arrived, his client was sleeping at the front desk. Mr. Yuen said he did not know anything about that.

28.    I also asked Mr. Yuen what the supposed emergency was. Mr. Yuen said that none of the employees of the hotel were around and that the owner had to run the hotel himself.

29.    I then informed Mr. Yuen that I personally observed other employees of the hotel present that day.

30.    Then Mr. Yuen told me that the owner had told him that the hotel was very busy and that it was this that made it an emergency. I then told Mr. Yuen that I personally looked at the hotel and there were no more than 4 cars present in the parking lot.

31.    I then asked Mr. Yuen to meet me at the Defendant's location as previously promised to avoid the waste of time in having me travel back to Chicago and return on another day. Mr. Yuen refused.

32. While I was having lunch in Lake Geneva, James K. Borcia, another one of Defendant's attorneys, called me at approximately 1:44 p.m.

33. Mr. Borcia and I conducted another Rule 37 conference during which I informed him the above occurrences and representations.

34. I informed Mr. Borcia that I had driven up from Chicago to Lake Geneva Wisconsin (2.5 hours, one-way, during rush-hour) to review documents for copying, and I again offered to have the document inspection occur now. Mr. Borcia refused.

35. Mr. Borcia (apparently unaware that his client had previously indicated it was impossible to do a document inspection on a weekend) offered to have a document inspection on Saturday or Sunday. I refused this offer as Saturday and Sunday had already been booked for personal family reasons.

36. Mr. Borcia then offered to have the documents scanned and sent to the Plaintiff's counsel on disc as was previously proposed by Plaintiff's counsel.

37. Plaintiff's counsel accepted this offer and asked that they be produced by Monday, July 20, 2009.

38. Mr. Borcia refused, but specifically represented that he would have Mr. Yuen go to the client's office that Saturday or Sunday, July 18-19, 2009, and personally supervise the production of documents to a third party document production company that would copy the documents onto a disc and that Plaintiff would have the documents no later than Friday, July 24, 2009.

39. As of the drafting of this certification the documents have not been produced.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930

Paul F. Markoff
Markoff Law Firm, LLC
180 West Washington, Suite 700
Chicago, IL 60602
312.726.4162