# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHRIS ARMES, individually and on behalf    )
of all others similarly situated,    )
        Plaintiff,    )    Case No. 08 C 244
    )
    v.    )    Judge Clevert
    )
SOGRO, INC. d/b/a Budget Host Diplomat Motel,  )
        Defendant.    )

## PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Lance A. Raphael        Paul F. Markoff (paul@markleinlaw.com)
Stacy M. Bardo        Markoff Leinberger LLC
Allison A. Krumhorn        180 W. Washington St., Ste. 700
The Consumer Advocacy Center, P.C.    Chicago, IL 60602
180 W. Washington St., Ste. 700    312.726.4162 (p)
Chicago, IL 60602        312.277.2507 (f)
312.782.5808 (p)
312.377.9930 (f)

## I. INTRODUCTION

Defendant admits that it violated the Fair and Accurate Transactions Act of 2003 ("FACTA") approximately 2,500 times.[1]  As a result of failing to truncate consumers' personal private card information, Defendant subjected an entire class of consumers to a higher risk of identity theft by printing their entire credit/debit card numbers and expiration dates on their receipts.  Put another way, Defendant printed up to 2,500 receipts that were essentially capable of being used as duplicate credit cards for anybody to use.

Despite national media coverage of credit card identity theft, Defendant's own credit card use, Defendant's contractual agreement and understanding to truncate card numbers on receipts, Defendant's receipt of notice about the truncation requirements and federal and state laws prohibiting Defendant from printing receipts with credit/debit card numbers and expiration dates, Defendant urges this Court to find, as a matter of law, that it knew nothing about FACTA and that its lack of knowledge is not reckless under *Safeco Ins. Co. of Am. v. Burr*, the most recent Supreme Court authority regarding this precise issue.[2]  However, for Defendant to prevail, ignorance is not enough; instead, Defendant needs to prove, as a matter of law, that its ignorance (itself a baseless claim) was not reckless.  As explained below, even if ignorance were a defense, which it is not, the evidence is clear that, at minimum, Defendant recklessly disregarded FACTA's requirements and therefore, willfully violated the statute.  As a result, this Court should grant Plaintiff's Cross-Motion for Summary Judgment.

---

[1]  On March 29, 2011, this Court certified a class consisting of: "All persons to whom Sogro, Inc. d/b/a Budget Host Diplomat Motel provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit card or debit card number."  *See* Plaintiff's Civil L.R. 56(b)(1)(C) Statement of Material Facts in Support of Cross-Motion for Summary Judgment ("Pl. Statement of Facts"), at ¶¶ 34-35.

[2]  551 U.S. 47 (2007).

## II.    FACTUAL BACKGROUND

Defendant is a Wisconsin corporation located in Lake Geneva, Wisconsin.[3]  Joseph Solus is the sole owner of Defendant.[4]  Defendant is a "person that accepts credit cards for the transaction of business" and is subject to FACTA.[5]  However, on April 30, 2007, Defendant provided Plaintiff with a receipt that contained Plaintiff's entire debit card number and expiration date.[6]  Defendant admits that it violated FACTA and that it did not stop violating FACTA as to all receipts that it issued until after the filing of Plaintiff's lawsuit.[7]

Despite Defendant's arguments to the contrary, Defendant was put on notice of FACTA's requirements well before the filing of Plaintiff's lawsuit.  For instance, in December 1999, Defendant contracted with Paymentech to process its credit cards.[8]  As part of its contractual obligations with Paymentech, Defendant was required to follow the rules of various card associations, including VISA, Mastercard and Discover Financial Services ("Discover").[9]  In 2006, VISA's rules required truncation of credit and debit card receipts.[10]  In 2007, Visa's rules also required truncation of card numbers and customer's receipts.[11]  In 2004, Discover's rules required truncation.[12]  Moreover, in 2007, not only did Discover publish new operating rules for merchants like Defendant that continued to require truncation, but Discover provided repeated notices of those rules on its statements to Defendant.[13]

---

[3]      Pl. Statement of Facts, at ¶ 1.
[4]      Pl. Statement of Facts, at ¶ 2.
[5]      Pl. Statement of Facts, at ¶ 3.
[6]      Pl. Statement of Facts, at ¶ 5.
[7]      Pl. Statement of Facts, at ¶¶ 4-5, 35.
[8]      Pl. Statement of Facts, at ¶ 6, 8.
[9]      Pl. Statement of Facts, at ¶¶ 6, 19, 22.
[10]     Pl. Statement of Facts, at ¶ 20.
[11]     Pl. Statement of Facts, at ¶ 21.
[12]     Pl. Statement of Facts, at ¶ 23.
[13]     Pl. Statement of Facts, at ¶¶ 24-25.

Additionally, on multiple occasions, Paymentech notified Sogro of the requirements relating to the truncation of debit and credit card numbers on the receipts it provided to its customers.[14] For instance, in March 2004, Paymentech sent Defendant a letter notifying it of the truncation requirements.[15] Also in March 2004, Paymentech sent Defendant a second letter notifying it of the truncation requirements.[16] In or about August 2004, Paymentech contacted Defendant several times by phone and followed up with a letter advising Defendant to comply with the truncation requirements.[17]

Then, in September 2004, Paymentech sent Defendant another notification informing Defendant that it was required to truncate credit/debit card numbers and expiration dates.[18] In January 2005, Paymentech sent Defendant a fifth notification, explaining to Defendant that it was required to comply with the Payment Card Data Security Standard, which required compliance with FACTA.[19] In February 2008, Paymentech sent another notification to Sogro regarding the truncation requirements.[20]

Defendant was also member of the Wisconsin Hotel & Lodging Association ("WH&LA"), whose purpose was to provide "marketing, governmental affairs, education, communication, and resource services to members" such as Defendant.[21] To this end, WH&LA sent periodicals to Defendant, which contained information about the truncation requirements.[22]

---

[14]    Pl. Statement of Facts, at ¶¶ 9-11, 13-16.
[15]    Pl. Statement of Facts, at ¶ 10.
[16]    Pl. Statement of Facts, at ¶ 11.
[17]    Pl. Statement of Facts, at ¶¶ 12-13.
[18]    Pl. Statement of Facts, at ¶ 14.
[19]    Pl. Statement of Facts, at ¶ 15.
[20]    Pl. Statement of Facts, at ¶ 16.
[21]    Pl. Statement of Facts, at ¶¶ 26-27.
[22]    Pl. Statement of Facts, at ¶¶ 28-31.

Moreover, since August 2005, Wisconsin businesses have been prohibited from issuing credit or debit card receipts that display more than the last five digits of the card number.[23]

However, despite the laws, numerous letters, contractual obligations, and articles sent to Defendant, it continued to violate FACTA until after Plaintiff filed this lawsuit.

## III.    LEGAL DISCUSSION

### A.    The FCRA and FACTA.

Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, specifically to "protect consumer privacy."[24]  FACTA, an amendment to the FCRA, requires that "[n]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."[25]  "The plain language of the statute has only one reasonable meaning: It 'unambiguously prohibits a person from printing more than the last five digits of a credit card on a receipt and from printing the expiration date on a receipt.' "[26]  If the FCRA violation is willful, the plaintiff may recover actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages.[27]  Plaintiff is seeking statutory damages for Defendant's willful violations of the statute.

### B.    Defendant Willfully Violated The FCRA.

The Supreme Court recently confirmed that a company is liable for a willful violation of the FCRA and, therefore, FACTA if it engages in conduct that violates the FCRA (such as

---

[23]    WIS. STAT. § 134.74.

[24]    *Safeco Ins. Co. of Am.*, 551 U.S. at 52 (*citing* 15 U.S.C. § 1681).

[25]    15 U.S.C. § 1681c(g)(1).

[26]    *Kubas v. Standard Parking Corp. IL*, 594 F. Supp. 2d 1029, 1032 (N.D. Ill. 2009) (*quoting Troy v. Home Run Inn, Inc.*, No. 07-C4331, 2008 U.S. Dist. LEXIS 30038, at * 8 (N.D. Ill. Apr. 14, 2008)).

[27]    *Safeco Ins. Co. of Am.*, 551 U.S. at 53 (*citing* 15 U.S.C. § 1691n(a)).

printing receipts that violate FACTA), either knowing that such conduct violates the FCRA or recklessly disregarding whether it violates the FCRA.[28]  Contrary to Defendant's characterization, neither scienter,[29] evil motive, nor malice[30] is required for a showing of willfulness.  Instead, the Supreme Court has set forth a two part test for "reckless" behavior:

> [A] company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.[31]

In other words, a company recklessly violates the FCRA when the action: (1) is a violation of the FCRA and (2) entailed " 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' "[32]  The Seventh Circuit has interpreted *Safeco* as stating that recklessness under the FCRA is "something more than negligence but *less than knowledge of the law's requirements*."[33]  Thus, Defendant is liable for willfully violating FACTA if: 1) Defendant printed more than five digits on Plaintiff's receipt and 2) recklessly disregarded the prohibition on doing so.  Defendant admits that it violated FACTA, and therefore, the first prong under *Safeco* is met.  As explained below, the second prong of *Safeco* is met because Defendant's risk of violating the FCRA's truncation requirements was greater than the risk associated with Defendant's careless conduct of ignoring and/or refusing to learn what the FCRA's truncation

---

[28]    *Id.* at 56-60.

[29]    *Edwards v. Toys "R" Us*, 527 F. Supp. 1197, 1212 n. 47 (C.D. Cal. 2007).

[30]    *See, e.g. Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir. 1993); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 972 (4th Cir. 1987).

[31]    *Safeco Co. of Am.*, 551 U.S. at 69.

[32]    *Id.* at 68 (*quoting Farmer v. Brennan*, 511 U.S. 824, 836 (1994).

[33]    *Kubas*, 594 F. Supp. 2d at 1032 (N.D. Ill. 2009) (*citing Murray v. New Cingular Wireless, Inc.*, 523 F.3d 719, 726 (7th Cir. 2008)) (emphasis added).

requirements entailed, and therefore constituted conduct that was "something more than negligence."[34]

## C. Defendant Acted In Reckless Disregard of FACTA.

The thrust of Defendant's Motion relies on Joseph Solus' testimony that he did not remember any contracts that he signed regarding the use of credit or debit cards, that he did not read any of the rules pertaining to the acceptance of cards, and that he does not recall receiving any notifications regarding truncation requirements. In other words, Defendant argues that it did not know that it was violating the law when it printed Plaintiff's entire debit card number and expiration date on the receipt. However, feigned ignorance is not a defense where Defendant was (1) put on notice of the need to truncate card numbers and expiration dates on numerous occasions; (2) contractually obligated to truncate card information on receipts; (3) had countless opportunities to notice its illegal conduct with plainly visible violations printed on the receipts it provided to its customers on a daily basis; and (4) had countless opportunities to notice its illegal conduct by virtue of the compliant receipts Solus received from other merchants when using his own credit card.[35] This is especially the case where failure to truncate is not just a violation of FACTA, but also constitutes a violation of Wisconsin Law § 134.74, which has also required credit and debit card truncation since 2005. As explained below, Defendant willfully violated FACTA as its actions had " 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' "[36]

---

[34]    *See id.*
[35]    *See, e.g.*, Pl. Statement of Facts, at ¶¶ 6-7, 9-17, 20-21, 23-25, 28-31, 41.
[36]    *Shurland v. Bacci Café & Pizzeria On Ogden, Inc.*, 259 F.R.D. 151, 156 (*quoting Safeco Co. of Am.*, 551 U.S. at 68).

### 1. Defendant was specifically put on notice of its obligations under FACTA.

Prior to the filing of Plaintiff's complaint, Defendant contracted with Paymentech to process its credit card transactions.[37] As part of its services provided to its merchants like Defendant, "Paymentech . . . made multiple efforts to notify its merchants of requirements relating to the truncation of card numbers."[38] For instance, in March 2004, Paymentech sent Defendant a notice that stated

---

[37] Pl. Statement of Facts, at ¶¶ 6-7, and <u>Ex. B</u> attached thereto, at ¶ 3 (Defendant "was a Paymentech merchant who began processing card transactions with Paymentech in December 1999, until the account was transferred to another acquirer in November 2008.").

[38] Pl. Statement of Facts, at ¶ 9, and <u>Ex. B</u> attached thereto, at ¶ 1.



# X marks the spot—

## Important information about protecting a cardholder's account number and identity

Visa, MasterCard, the federal government, as well as numerous states have initiated regulations and legislation that require merchants to have point-of-sale terminals that assist in minimizing fraud. Because laws vary slightly from state to state, we use the Visa/MasterCard definition to outline the requirements, as follows:

- Point-of-sale terminal should print only the last four digits of the account number on the customer copy of a receipt.
- Point-of-sale terminal should suppress the expiration date on the customer copy of a receipt.
- The expiration date and complete account number can appear on the merchant copy of a receipt, or on a manually imprinted or hand-written receipt.

**ACTION REQUIRED:** If your terminal prints the full cardholder number on the customer's receipt, please call the Help Desk phone number on your terminal so your software can be updated. If your customer receipts already hide all but the last 4 digits of cardholder number, no action is necessary on your part.

[39]

---

[39]     Pl. Statement of Facts, at ¶ 10, and <u>Ex. B</u> attached thereto, at ¶ 4.

9

Again, in March 2004, Paymentech sent Sogro a second notice that contained the

following:



Visa, MasterCard, the federal government, as well as numerous states have initiated regulations and legislation that require

merchants to have point-of-sale terminals that assist in minimizing fraud. Because laws vary slightly from state to state.

Paymentech uses the Visa/MasterCard definition to outline the requirements, as follows:

• Point-of-sale terminal should print only the last four digits of the account number on the customer

copy of a receipt.

• Point-of-sale terminal should suppress the expiration date on the customer copy of a receipt.

• The expiration date and complete account number can appear on the merchant copy of a receipt, or

on a manually imprinted or hand-written receipt.

**ACTION REQUIRED:** If your terminal prints the full cardholder number on the customer's receipt, please call the

Paymentech Help Desk phone number on your terminal so your software can be updated. If your customer receipts

already hide all but the last 4 digits of cardholder number, no action is necessary on your part.

[40]

---

[40]        Pl. Statement of Facts, at ¶ 11, and <u>Ex. B</u> attached thereto, at ¶ 5.

10

Then, on August 15, 2004, August 20, 2004, and August 25, 2004, Paymentech called Defendant to inform it of FACTA's truncation requirements.[41] Defendant never returned the calls. To follow up, Paymentech sent Sogro another letter, which stated as follows:

> Visa and MasterCard, as well as numerous states, have initiated regulations and legislation that require merchants to have fraud-deterrent point-of-sale terminals. Because laws vary slightly from state to state, Paymentech uses the Visa/MasterCard definition to outline the requirements as follows:
>
> - Point-of-sale terminal should print only the last four digits of the account number on the customer copy of the receipt.
> - Point-of-sale terminal should suppress the expiration date on the customer copy of a receipt.
> - Expiration date and complete account number can appear on the merchant copy of the receipt or on a manually imprinted or hard-written receipt.
>
> According to Paymentech records, your company is currently using point-of-sale equipment that is non-compliant with these requirements and should therefore be updated to meet the account truncation requirements. Failure to comply could result in drastic fines from Visa and/or MasterCard and your state.
>
> We have attempted to contact you via phone on 8/15/2004, 8/20/2004 and 8/25/2004 to assist you with this mandate. Unfortunately, we have had to leave messages with no response thus far.
>
> Paymentech values your business and would like to ensure your company is in full compliance by the card association and your state deadlines. Please contact our Paymentech Help Desk at (800) 354-8893 so that we can work together to help you attain full compliance levels.[42]

Thus, in addition to sending this notice, the letter makes clear that Defendant failed to return any of the telephone calls Paymentech made in attempt to make Defendant compliant with truncation requirements.

In September 2004, Paymentech mailed a fourth notice informing Defendant that it needed to truncate credit and debit card information on receipts that it provided to customers.

---

[41] Pl. Statement of Facts, at ¶ 12, and Ex. B attached thereto, at ¶ 8.
[42] Pl. Statement of Facts, at ¶ 13, and Ex. B attached thereto, at ¶ 8.

## Account Number Truncation Suppression Requirement Nears

Next year, Visa and MasterCard will require suppression of all but the last four digits of the cardholder number on any customer receipt printed from a POS terminal or POS device. This is called account number truncation, and it helps to prevent fraud. If you use a terminal or device for your processing, you should check them to make sure they meet these requirements.

MasterCard requires that all terminals and devices comply with account truncation requirements by April 1, 2005. Visa requires that all comply by July 1, 2006.

It's easy to determine if your terminals and devices are compliant. If they are, only the last four digits of the cardholder's account number will print on the customer receipt; an X represents all other digits. The expiration date will not print on the receipt. If your terminals and devices print a cardholder's full account number and/or the card expiration date on the receipt, they are not compliant. Your terminals or devices might simply need a software update, or in some cases they might have to be replaced.

If your terminals or devices are not currently truncating, Paymentech is here to help you. Please contact the customer service number listed on your merchant statement for upgrade assistance. For more information, you can also visit the Paymentech website at www.paymentech.com. Click on the Solutions section, then Merchant Support Center, then scroll down to the Account Truncation Resource Center.

[43]

In January 2005, Paymentech notified Defendant yet again of Defendant's need to truncate credit cards, with a notice that stated as follows:

# The Payment Card Industry (PCI) Data Security Standard

When your customers offer their credit card at the point of sale, over the Internet, on the phone or through the mail, they want assurance that their account information is safe. That's why the card associations have aligned to create the Payment Card Industry Data Security Standard. The program is intended to protect cardholder data—wherever it resides—ensuring that members, merchants and service providers maintain the highest information security standard.

The following FAQs contain details about PCI Data Security Standards that you should become familiar with:

**Why does this apply to me?**
The PCI Data Security Standard Program applies to all U.S. entities that store, transmit or process Visa or MasterCard cardholder data in the United States, regardless of payment channel (online, mail/telephone orders or "brick and mortar").

**If I'm not compliant, what do I have to do?**
Visit the card associations' websites listed at the end of these FAQs to view their respective compliance standards, which include:

continued on back

---

[43]     Pl. Statement of Facts, at ¶ 14, and Ex. B attached thereto, at ¶ 6.

**What are the compliance deadlines?**
The compliance deadlines vary by card association and the number of credit card transactions your business processes. Most likely you will fall into the Level 3 category (you process between 20,000 and 150,000 Visa or MasterCard ecommerce transactions a year) which has a compliance deadline of June 30, 2005. However, we recommend that you visit the compliance sites for both MasterCard and Visa for the latest information on compliance. Go to https://sdp.mastercardintl.com and http://www.usa.visa.com/business/accepting_visa/ops_risk_management/cisp.html for more information and deadlines.

**Where can I obtain additional information about the compliance programs?**
Additional information on the Security Programs of Visa USA, Visa Canada and MasterCard can be found at the following websites:
http://www.usa.visa.com/business/accepting_visa/ops_risk_management/cisp.html
http://www.usa.visa.com/business/accepting_visa/ops_risk_management/cisp_merchants.html?it=c|/business/
      accepting_visa/ops_risk_management/cisp%2Ehtml|Merchants
https://sdp.mastercardintl.com/
http://home5.americanexpress.com/merchant/resources/fraudprevention/datasecurity.asp
http://www.discoverbiz.com/merchant/resources/data/data_security.html
44

In January 2005, the PCI Data Security Standard notified merchants of the need to truncate.[45]

However, despite being put on notice, yet again, of the truncation requirements, Defendant took no action whatsoever to become compliant.

Finally, Paymentech's billing statement for February 2008[46] also put Defendant on notice of its requirement to truncate by stating as follows:

---

[44]   Pl. Statement of Facts, at ¶ 15, and <u>Ex. B</u> attached thereto, at ¶ 7.
[45]   Pl. Statement of Facts, at ¶ 15.
[46]   Pl. Statement of Facts, at ¶ 16.

# How To Read Your Statement



In other words, prior to the filing of Plaintiff's lawsuit, Defendant received no fewer than six

written notices and several phone calls from Paymentech informing it of its obligation to truncate

credit card information and took no action to become compliant.  Defendant, therefore,

recklessly disregarded FACTA's requirements, and therefore, willfully violated the statute.

### 2. Defendant also violated its contractual obligations to Paymentech to be FACTA compliant.

Under the terms of the contract he signed, which he acknowledges "reading and

understanding,"[47]  Joseph Solus, on behalf of Defendant, agreed with Paymentech that

Defendant would comply with Operating Guide and "Rules" (defined as all rules and regulations

of VISA, MasterCard or any other Card associations for which Company provided Card

processing). The agreement stated as follows:

For all Card transactions, Merchant shall comply with
 the Operating Guide and Rules.

Merchant's signature on this Agreement constitutes the acknowledgment
that Merchant has received, has reviewed and understands the Operating Guide
[48]

Like all other Card Associations, in 2006, VISA required Defendant to comply with the

following:

---

[47]    Pl. Statement of Facts, at ¶ 7, and the contract at p. FD 000003 and FD 000008, a copy of which is attached as Ex. 2 to the Dep. of J. Solus (Ex. A to Pl. Statement of Facts).

[48]    The text reads as follows: "For all Card transactions, Merchant shall comply with the Operating Guide and Rules.  Merchant's signature on this Agreement constitutes the acknowledgment that Merchant has received, has reviewed and understands the Operating Guide.'  Under the agreement, "Rules" is defined as "rules and regulations (the "Rules") of VISA, Mastercard or any other Card associations for which Company provides Card processing pursuant to this Agreement[.]"  *See* Pl. Statement of Facts, at ¶ 6 and the contract at p. FD 000003, a copy of which is attached as Ex. 2 to the Dep. of J. Solus (Ex. A to Pl. Statement of Facts).



**Truncated Account Number**

*Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.*

*After July 1, 2006, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006. To ensure your POS terminals are properly set up for account number truncation, contact your merchant bank.*

Likewise, the 2007 Visa Rules provided as follows:

---

[49]     Pl. Statement of Facts, at ¶ 20.



**Truncated Account Number**

*Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.*

*The expiration date should not appear at all. Existing POS terminals must comply with these requirements. To ensure your POS terminals are properly set up for account number truncation, contact your merchant bank.*

[50]

Moreover, the truncation requirements appeared in no fewer than 6 places in the 2006 and 2007 versions of Visa's Rules.[51]  Like the Paymentech notices that it ignored, Defendant again shirked its legal responsibility to follow its contract with Paymentech and abide by VISA's rules, which

---

[50]    Pl. Statement of Facts, at ¶ 21.
[51]    Pl. Statement of Facts, at ¶¶ 20-21.

required truncation. Indeed, Visa has a more stringer truncation requirement than does FACTA such that compliance with Visa's Rules constitutes FACTA compliance. Defendant clearly recklessly disregarded the truncation requirements of FACTA.

### 3. Discover Required Credit Card Truncation.

As part of its contract with Paymentech and Discover, Defendant was also supposed to comply with Discover's rules.[52] In 2004, Discover required that Sogro truncate the card account number and expiration date on the electronically-printed receipts it provided to customers.[53] Starting in April 2007, Defendant received statements from Discover alerting it to the fact that Defendant was to comply with Discover's new Merchant Operating Regulations that were made available on Discover's website as of April 16, 2007.[54] Despite the fact that these rules also required truncation, Defendant continued to fail to truncate credit and debit card receipts, in violation of the law as well as its contract with Paymentech and Discover.

### 4. Defendant was Put On Notice of FACTA's Requirements by the Wisconsin Hotel and Lodging Association.

At all relevant times, Defendant was a member of the Wisconsin Hotel and Lodging Association ("WH&LA").[55] The stated purpose of the WH&LA is to provide "marketing, government affairs, education, communication, and resource services to member lodging properties" around the State of Wisconsin.[56] As part of its agenda, to notify its members such as Defendant of the legalities of running a motel, in the Summer of 2005, WH&LA sent Defendant

---

[52] Pl. Statement of Facts, at ¶¶ 6-7, 22.
[53] Pl. Statement of Facts, at ¶ 23.
[54] Pl. Statement of Facts, at ¶¶ 24-25.
[55] Pl. Statement of Facts, at ¶ 27.
[56] Pl. Statement of Facts, at ¶ 26.

the Inn Touch Guide, which Defendant admits receiving.[57]  The Inn Touch Guide contained the

following:

> ## Information Protection/Data Security
>
> As a credit card merchant, you are responsible for helping to ensure that your customer's credit card information is secured and protected against future fraud activity. This is not only good business, but could have some legal ramifications if proper precautions to protect your guests identity are not followed.
>
> Here are a few steps that you can take to protect this information:
>
> 4. Do not print the card expiration date or your merchant account number on the terminal (guest) receipt. Only print a "subset" of the card account numbers on the terminal (guest) receipt.   [58]

Additionally, in the Winter of 2006, Defendant received another InnTouch Magazine from the

WH&LA, which stated the following:

---

[57]    Pl. Statement of Facts, at ¶¶ 28-29.
[58]    Pl. Statement of Facts, at ¶¶ 28-29.

19

# IMPORTANT!! Credit Card Merchants Must Comply with Security Standards

The Payment Card Industry (PCI) Data Security Standards (DSS) are no required for all merchants, including: Retail (brick-and-mortar), Mail/telephone order, and e-Commerce.

All major credit card associations such as Visa, MasterCard, American Express, Discover, Diners Club and JCB all endorse, and require the unified PCI Data Security Standards.

Why Comply? Both Visa and MasterCard impose fines to non-compliant merchants.

Another basic requirement is that every merchant that connects to the Internet must be tested. Testing is required for all Internet connection points whether they are home/office connections (dial-up modem, DSL, cable or wireless) or permanent Internet servers such as web site, mail FTP, etc.

For more information, go to www.securitymetrics.com/compliance_summary.adp.[59]

---

[59]     Pl. Statement of Facts, at ¶¶ 30-31.

**Defendant's reckless disregard of Paymentech's truncation notices, the Paymentech contract, VISA rules, Discover Rules and the WH&LA articles evidences willfulness.**

By ignoring the numerous notices sent to Defendant as well as its legal obligations to follow the truncation requirements, it is clear that Defendant willfully violated FACTA's mandate that Defendant protect the privacy of credit and debit card holders by truncating their personally identifying credit and debit card information.  Such reckless disregard is confirmed by Joseph Solus' deposition testimony, where he stated that never reads anything other than "numbers" and refuses to undertake any due diligence whatsoever regarding the legal requirements with which he may need to comply.[60]  As stated in the deposition of Joseph Solus:

> Q:  Have you ever . . . looked up regulations relating to a motel operator at all?
> A:  No.
> …
> Q:  Did you read the statements you got from Paymentech?
> A:  Every word of them, every month, no. . . I reviewed them . . . [f]or the amount[.]
> …
> Q:  Do you review them for anything else other than the amount?
> A:  No.
> …
> Q:  Have you ever visited Paymentech.net?
> A:  No.
> Q:  How about Paymentech.com? [61]

---

[60]  Pl. Statement of Facts, at ¶¶ 36-40, 42-44.

[61]  Prior to October 2007, Paymentech's website stated as follows:

> You may already be aware that with the growing rate of identity theft and fraud, many states have passed a legislation requiring merchants to comply with "account truncation" rules – a rather technical term for a pretty simply concept.  Account number truncation requires that merchants suppress – or hide – all but the last four numbers on a printed cardholder receipt, as well as the expiration date.

> In addition, Visa and Master Card have also set deadlines for compliance among businesses.  Visa required requires [*sic*] that all new terminals deployed after July 1, 2003 to be in compliance by July 1, 2003, while pre-existing terminals must comply by July 1, 2006.  MasterCard has set its new and existing terminal deadline at April 1, 2005.

A: No.
Q: How about Chasepaymentech.com?
A: No.
Q: Firstdata.com?
A: No.
Q: Have you ever visited Discover's website?
A: No.
Q: Visa?
A: No.
Q: Master Card?
A: No.
Q: American Express?
A: No.
Q: No website for Paymentech or First Data?
A: No.
…
Q: Have you ever heard of Paymentech Card Industry data security standards?
A: No.
Q: Have you ever heard of Payment Card Industry or PCI?
A: No.
…
Q: Did you ever inquire whether there were any rules for [merchants accepting Visa]?
A: No.
Q: All right. Do you know if Master Card has any rules regarding accepting Master Card cards for payment?
A: Well, no. But apparently, if Visa has it, Master Card has it.
…
Q: Ever inquired whether Master Card has any such rules?
A: No.
…
Q: Mr. Solus, this [Discover billing statement] has a notice on it under the activity report headline. Do you ever read this notice?
A: No.
Q: Again, you are just looking for amounts on these things?
A: Correct.
Q: Now, I have got some other activity reports that I can go through and they are going to relate to those notices there. Did you ever read any of those notices?
A: No.
Q: So it doesn't really matter what the topic is in these notices, you never read them?
A: No.[62]

---

*See* Pl. Statement of Facts, at ¶ 47.
[62]    Pl. Statement of Facts, at ¶ 43.

Defendant even admitted that he would *not* have even made sure his machine truncated credit card information if he received the notifications because he did not believe it was his responsibility to make his credit card machine compliant.[63]  In other words, Defendant did not believe it was his responsibility to ensure that he was following the law.  This behavior is consistent with Sogro's conduct relating to any legal matters affecting Sogro.  For instance, like all other warnings, Sogro failed to heed Paymentech's other required security protections, which were explained in Paymentech's statements to Sogro.[64]  As explained by Solus, the only changes he makes are those he is ordered to when an entity such as the AAA comes to inspect the motel.[65]

In sum, by ignoring Paymentech's notices, by breaching its contract with Paymentech, by failing to comply with VISA's requirements, by failing to comply with Discover's requirements, by ignoring the articles sent to it by WH&LA, and by violating Wisconsin law, Defendant recklessly disregarded, if not consciously avoided,[66] complying with FACTA.  Failing to take any action whatsoever to ensure that it was following the laws as required, it is clear that Defendant recklessly disregarded FACTA's requirements, and therefore, willfully violated the statute.

---

[63]    Pl. Statement of Facts, at ¶ 40.

[64]    Pl. Statement of Facts, at ¶ 36.

[65]    Pl. Statement of Facts, at ¶ 37.

[66]    Defendant's motion for summary judgment should also be denied because conscious avoidance is evidence of guilty knowledge.  *See U.S. v. Griggs*, 569 F.3d 341, 343 (7th Cir. 2009).  Paymentech did everything it could within reason to educate defendant of FACTA's truncation requirements.  Defendant's refusal to receive, process, and act on this information, as well as its failure to truncate as it was contractually obligated to do, is clearly avoidance on Defendant's part.

## IV.     CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests that this Court enter summary judgment in favor of Plaintiff and the Class and against Defendant.

CHRIS ARMES, Plaintiff,

By:     /s Lance A. Raphael
        One of Plaintiff's Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of this *Plaintiff's Memorandum of Law in Support of Cross-Motion for Summary Judgment* on the following electronically by using the CM/ECF system on this 12th day of April, 2011:

James K. Borcia
Tressler LLP
233 S. Wacker Dr., 22nd Fl.
Chicago, IL 60606

<u>/s Lance A. Raphael</u>