UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRIS ARMES, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOGRO, INC. d/b/a Budget Host Diplomat Motel, )<br>)<br>Defendant. ) | Case No. 08 C 244<br><br>Judge Clevert |

PLAINTIFF'S CIVIL L.R. 56(b)(1)(C)
STATEMENT OF MATERIAL FACTS IN
SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Chris Armes, by and through his attorneys, hereby submits his Local Rule 56(b)(1)(B) Statement of Material Facts in support of his Motion for Summary Judgment.

STATEMENT OF MATERIAL FACTS

1. Defendant Sogro, Inc. is a Wisconsin corporation located in Lake Geneva, Wisconsin. Sogro owns and runs the Budget Host Diplomat Motel (Ex. A, Dep. of J. Solus, pp. 12-13).

2. Joe Solus is the owner and operator of the Budget Host Diplomat Hotel. (Ex. A, Dep. of J. Solus, pp. 12-13).

3. At all relevant times, Sogro accepted credit and debit cards for the transaction of business. (Ex. A, Dep. of J. Solus, p. 16).

4. Sogro did not truncate credit and debit card numbers and expiration dates on customer copies of electronically-printed receipts until after the filing of Plaintiff's lawsuit. (Ex. A, Dep. of J. Solus, p. 29, ll. 5-25, p. 30, ll.1-9, 23-25, p. 31, ll. 1-4).

1

5. On April 30, 2007, Sogro provided Armes with an electronically-printed receipt that displayed Plaintiff's the entire number and expiration date of his debit card. (Ex. B, Dep. of C. Armes, p. 22, ll. 1-2, p. 146, l. 6, p. 153, ll. 6-8, p. 169, ll. 16-19; Ex. A, Dep. of J. Solus, at p. 30, ll. 1-6).

6. In 1999, Sogro contracted with Paymentech to process credit card transactions at the Budge Host Diplomat Motel whereby Sogro was to comply "with the Operating Guide and Rules." Under the Agreement, "Rules" is defined as "rules and regulations (the "Rules") of VISA, Mastercard or any other Card associations for which Company provides Card processing pursuant to this Agreement[.]" (Ex. A, Dep. of J. Solus, pp. 43-44, and Ex. 2 attached thereto, as p. FD 000003).

7. In signing the contract with Paymentech, Sogro's principal, Joseph Solus, acknowledged he read and understood the contract which required compliance with Paymentech rules as well as those of credit card companies. (Ex. A, Dep. of J. Solus, pp. 43-44, p. 130, ll. 1-5) and Ex. 2 attached thereto, as pp. FD000003 and FD000008; Ex. C, Aff. of B. Wong, ¶ 3).

8. At all times relevant to this lawsuit, Sogro also contracted with Paymentech to process debit card transactions at its motel. (Ex. A, Dep. of J. Solus, pp. 43-44, and Ex. 2 attached thereto, as pp. FD000003 and FD000008).

9. As part of its services to Sogro, Paymentech made multiple efforts to notify Sogro of the requirements relating to the truncation of debit and credit card numbers. (Ex. C, Aff. of B. Wong, at ¶ 1).

10. In March 2004, Paymentech sent Sogro a notice stating: "Visa, Mastercard, the federal government, as well as numerous states have initiated regulations and legislation that require merchants to have point-of-sale terminals that assist in minimizing fraud . . . Point-of-

2

Ex. C, Aff. of B. Wong, at ¶ 4, and Ex. 1 attached thereto).

11.     In March 2004, Paymentech sent Sogro a second notice stating: "Visa, Mastercard, the federal government, as well as numerous states have initiated regulations and legislation that require merchants to have point-of-sale terminals that assist in minimizing fraud . . . Point-of-sale terminal should print only the last four digits of the account number on the customer copy of a receipt. Point-of-sale terminal should suppress the expiration date on the customer copy of a receipt. (Ex. C, Aff. of B. Wong, at ¶ 5, and Ex. 2 attached thereto).

12.     In August 2004, Paymentech called Sogro to notify it of the truncation requirements. (Ex. C, Aff. of B. Wong, at ¶ 8, and Ex. 5 attached thereto).

13.     After Sogro failed to return Paymentech's calls, Paymentech sent Sogro another letter, which stated:

> Visa and Mastercard, as well as numerous states, have initiated regulations and legislation that require merchants to have fraud-deterrent point-of-sale terminals . . . . Paymentech uses the Visa/Mastercard definition to outline the requirements as follows:
>
> - Point-of-sale terminal should print only the last four digits of the account number on the customer copy of the receipt.
> - Point-of-sale terminal should suppress the expiration date on the customer copy of a receipt.
>
> According to Paymentech records, your company is currently using point-of-sale equipment that is non-compliant with these requirements and should therefore be updated to meet the account truncation requirements. Failure to comply could result in drastic fines from Visa and/or Mastercard.

(Ex. C, Aff. of B. Wong, at ¶ 8, and Ex. 5 attached thereto).

14. In September 2004, Paymentech sent Sogro another letter notifying Sogro of its need to truncate credit and debit card information on receipts. (Ex. C, Aff. of B. Wong, at ¶ 6, and Ex. 3 attached thereto). Specifically, the notice stated:

> Next year, Visa and MasterCard will require suppression of all but the last four digits of the cardholder number on any customer receipt printing from a POS terminal or POS device. This is called account number truncation and it helps prevent fraud. If you use a terminal or device for your processing you should check them to make sure they meet requirements.
>
> MasterCard requires that all terminals and devices comply with account truncation requirements by April 1, 2005. Visa requires that all comply by July 1, 2006.

(Ex. C, Aff. of B. Wong, at ¶ 6, and Ex. 3 attached thereto).

15. In January 2005, Paymentech sent Sogro a notice indicating that it needed to be compliant with the Payment Card Industry Data Security Standard, which also required truncation of credit and debit card information on receipts provided to customers. (Ex. C, Aff. of B. Wong, at ¶ 7, and Ex. 4 attached thereto; Ex. D, Payment Card Industry Data Security Standard (Jan. 2005)).

16. The Merchant Card Processing Statement for 2/01/08-2/29/08 that was sent from Paymentech to Sogro notified Sogro of the following information:

> **Government Mandated Equipment Upgrade – Are you in compliance? To reduce credit card fraud and protect cardholder account information, U.S. government truncation legislation was passed December 4, 2003.** As a result, **all point of sale devices in use on January 1, 2005 must be in compliance by December 4, 2006.**

Ex. A, Dep. of J. Solus, at pp. 76-78, and Ex. 9 attached thereto.

17. Sogro admits to receiving the Merchant Card Processing Statement for 2/01/08-2/29/08 sent by Paymentech. (Ex. A, Dep. of J. Solus, at p. 76, ll. 6-25).

4

18. At all times relevant, Sogro accepted Visa credit and debit cards. (Ex. A, Dep. of J. Solus, at p. 126).

19. Pursuant to the terms of Sogro's contract with Paymentech, it was obligated to follow VISA rules. (Ex. A, Dep. of J. Solus, pp. 43-44, 125-126, 128, ll. 6-15 and Ex. 2 attached thereto, at pp. FD000003 and FD 000008).

20. In 2006, VISA required that "only the last four digits of an account number . . . be printed on the customer's copy of the receipt" and that "the expiration should not appear at all" on the customer's receipt. (Ex. E, Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines (2006), at pp. 17, 21, and 62).

21. In 2007, VISA required that "only the last four digits of an account number . . . be printed on the customer's copy of the receipt" and that "the expiration should not appear at all" on the customer's receipt. (Ex. F, Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines (2007), at p. 17, 21, and 62).

22. Pursuant to the terms of Sogro's contract with Paymentech, Sogro was obligated to follow Discover rules. (Ex. A, Dep. of J. Solus, pp. 43-44, 130, ll. 1-4, and Ex. 2 attached thereto, at pp. FD000003 and FD000008).

23. In October 2004, Discover required its merchants to truncate the card number and expiration dates and its customers' electronically printed receipts. (Ex. G, Affidavit of Carrie L. Back, at p. DFS 00049 (October 2004 Discover Network Merchant Operating Guidelines)).

24. In Discover's March 2007, April 2007, and September 2007 Statements it sent to Sogro, it informed Sogro that:

> **IMPORTANT NOTE: Discover Network Operating Regulations – Notifications of Change. Beginning April 16, 2007, the new Merchant Operation Regulations will be available for download by visiting DiscoverNetworkOpsRegs.com.**

(Ex. H, Discover Activity Reports to Sogro for March 2007, April 2007, and September 2007).

25. Under the terms of the New Merchant Agreement, available April 2007, Sogro was required to truncate the card number and expiration dates and its customers' electronically printed receipts. (Ex. G, Affidavit of Carrie L. Back, at pp. DFS 00081 and 00092 (Merchant Operating Regulations, released April 2007)).

26. The stated purpose of the WH&LA is to provide "marketing, government affairs, education, communication, and resource services to member lodging properties" around the State of Wisconsin. (Ex. I, Aff. of T. Pugal, ¶ 1).

27. Prior to 2000, Sogro was a member of the Wisconsin Hotel and Lodging Association (WH&LA) f/k/a the Wisconsin Innkeeper's Association. (Ex. I, Aff. of T. Pugal, ¶ 3).

28. In the Summer of 2005, WH&LA sent Sogro the *Inn Touch Guide*, which Sogro admits receiving. (Ex. A, Dep. of J. Solus, p. 104, ll. 14-25, and Exhibit 22 attached thereto).

29. The Summer of 2005 *Inn Touch Guide* contained an article notifying credit card merchants such as Sogro of the need to truncate information on the receipts it provided to its customers. (Ex. A, Dep. of J. Solus, p. 104, ll. 14-25, and Exhibit 22 attached thereto).

30. In the Winter of 2006, WH&LA sent Sogro *Inn Touch Magazine*, which Sogro admits receiving. (Ex. A, Dep. of J. Solus, pp. 111-12 and Exhibit 26 attached thereto).

31. The *Inn Touch Magazine* contained an article notifying Sogro that it needed to comply with the Payment Card Industry Data Security Standards. (Ex. A, Dep. of J. Solus, pp. 111-12 and Exhibit 26 attached thereto).

32. In January 2005, the Payment Card Industry Data Security Standards that merchants required truncation of card numbers. (Ex. D, at p. 6).

6

33. Since August 2005, Wisconsin businesses have been prohibited from issuing credit or debit card receipts that display more than the last five digits of the card number. WIS. STAT. § 134.74.

34. On March 29, 2011, this Court certified the following class in this case: "All persons to whom Sogro, Inc. d/b/a Budget Host Diplomat Motel provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit card or debit card number." (Dkt. 75, p. 2, p. 15).

35. Defendant violated FACTA as to all members of the proposed class. (Ex. A, Dep. of J. Solus, p. 29, ll. 5-25, p. 30, ll.1-9, 23-25, p. 31, ll. 1-4).

36. Joseph Solus testified that he did not bother to read Sogro's statements from Paymentech other than to see the "numbers" and does not read any notices contained in statements from Paymentech and other credit card companies. (Ex. A, Dep. of J. Solus pp. 51-52, p. 136, ll. 7-23), even though the notices contained other important alerts. (Ex. J, Paymentech Statements from May 2005-January 2006, March 2006-April 2006, July 2006-November 2006, January 2007, May 2007, July 2007-December 2007).

37. In fact, the only changes he makes are those he is ordered to make following an on-site inspection. (Ex. A, Dep. of J. Solus, pp. 33-39).

38. Joseph Solus agreed and understood that Sogro was contractually obligated to follow Visa's and Discover's rules, but neither he nor anybody else made any effort to learn what Visa's and Discover's rules were. (Ex. A, Dep. of J. Solus, pp. 43-44, 128, ll. 6-15, p. 132, and Ex. 2 attached thereto, at pp. FD 000003 and 000008).

39. Sogro never researched whether there were any regulations it was to comply with. (Ex. A, Dep. of J. Solus, p. 39, ll. 4-7).

40. The principal of Sogro, Joseph Solus, admits that even if he received notices regarding truncation, he would not have taken any action as he believed it was not his responsibility to make sure the credit card machine was acting in accordance with the law. (Ex. A, Dep. of J. Solus, pp. 85-87).

41. Joseph Solus never would look at whether receipts he personally received were truncated. (Ex. A, Dep. of J. Solus, pp. 162-164).

42. Joe Solus did not read Sogro's statements from Paymentech other than to see the "numbers" and does not read any notices contained in statements from Paymentech and other credit card companies. (Ex. A, Dep. of J. Solus, pp. 51-52, p. 136, ll. 7-23).

43. Sogro made no effort to learn any of the rules it was obliged to follow. As stated in Joseph Solus' deposition:

> Q: Have you ever . . . looked up regulations relating to a motel operator at all?
> A. No.

(Ex. A, Dep. of J. Solus, p. 39, ll. 4-7).

> Q: Did you read the statements you got from Paymentech?
> A. Every word of them, every month, no. . . I reviewed them . . . [f]or the amount[.]

(Ex. A, Dep. of J. Solus, p. 51, ll. 16-25).

> Q. Do you review them for anything else other than the amount?
> A. No.

(Ex. A, Dep. of J. Solus, p. 52, ll. 6-8).

> Q: Okay. Have you ever visited Paymentech.net?
> A: No.
> Q: How about Paymentech.com?
> A. No.
> Q. How about Chasepaymentech.com?

8

    A: No.
    Q: Firstdata.com?
    A: No.
    Q: Have you ever visited Discover's website?
    A: No.
    Q: Visa?
    A: No.
    Q: Master Card?
    A: No.
    Q: American Express?
    A: No.
    Q: No website for Paymentech or First Data?
    A: No.

(Ex. A, Dep. of J. Solus, p. 60, ll. 22-25; p. 61, ll. 1-16).

    Q: Have you ever heard of Paymentech Card Industry data security standards?
    A: No.
    Q: Have you ever heard of Payment Card Industry or PCI?
    A: No.

(Ex. A, Dep. of J. Solus, p. 64, ll. 12-16).

    Q: Did you ever inquire whether there were any rules for [merchants accepting Visa]?
    A: No.
    Q: All right. Do you know if Master Card has any rules regarding accepting Master Card cards for payment?
    A: Well, no. But apparently, if Visa has it, Master Card has it.

(Ex. A, Dep. of J. Solus, p. 128, ll. 6-15).

    Q: Ever inquired whether Master Card has any such rules?
    A: No.

(Ex. A, Dep. of J. Solus, p. 128, ll. 24-25, p. 129, l. 1).

    Q: Mr. Solus, this [Discover billing statement] has a notice on it under the activity report headline. Do you ever read this notice?
    A: No.
    Q: Again, you are just looking for amounts on these things?
    A: Correct.

(Ex. A, Dep. of Joseph Solus, p. 135, ll. 20-25, p. 136, l. 11-16).

    Q: Now, I have got some other activity reports that I can go through and they are going to relate to those notices there. Did you ever read any of those notices?

9

  A: No.
  Q: So it doesn't really matter what the topic is in these notices, you never read them?
  A: No.

(<u>Ex. A</u>, Dep. of J. Solus, p. 136, l. 7-23).

  44. Sogro never researched whether there were any regulations it was to comply with.

(<u>Ex. A</u>, Dep. of J. Solus, p. 39, ll. 4-7).

  45. Prior to October 2007, Paymentech's website stated as follows:

> You may already be aware that with the growing rate of identity theft and fraud, many states have passed a legislation requiring merchants to comply with "account truncation" rules – a rather technical term for a pretty simply concept. Account number truncation requires that merchants suppress – or hide – all but the last four numbers on a printed cardholder receipt, as well as the expiration date.
>
> In addition, Visa and Master Card have also set deadlines for compliance among businesses. Visa required requires [*sic*] that all new terminals deployed after July 1, 2003 to be in compliance by July 1, 2003, while pre-existing terminals must comply by July 1, 2006. MasterCard has set its new and existing terminal deadline at April 1, 2005.

(<u>Ex. C</u>, Aff. of B. Wong, ¶ 12, and <u>Ex. 9</u> attached thereto).

  46.  Sogro admits that if it received notices regarding truncation, it would not have taken any action as it believed it was not its responsibility to make sure the credit card machine was compliant with the law. (<u>Ex. A</u>, Dep. of J. Solus, pp. 85-87).

  47.  Prior to October 2007, Paymentech's website stated as follows:

> You may already be aware that with the growing rate of identity theft and fraud, many states have passed a legislation requiring merchants to comply with "account truncation" rules – a rather technical term for a pretty simply concept. Account number truncation requires that merchants suppress – or hide – all but the last four numbers on a printed cardholder receipt, as well as the expiration date.
>
> In addition, Visa and Master Card have also set deadlines for compliance among businesses. Visa required requires [*sic*] that all new terminals deployed after July 1, 2003 to be in compliance by July 1, 2003, while pre-existing terminals must

comply by July 1, 2006. MasterCard has set its new and existing terminal deadline at April 1, 2005.

(Ex. C, Aff. of B. Wong, ¶ 12, and Ex. 9 attached thereto).

48. Subsequent to the filing of this lawsuit, Sogro continues to take no action to make sure the business is compliant with all applicable laws. (Ex. A, Dep. of J. Solus, pp. 93-94).

49. Christopher Armes paid Sogro with his personal Visa debit card and was not reimbursed by his employer for such charge. Armes was only paid on a commission basis. (Ex. B, Dep. of C. Armes, p. 14, ll. 22-24; p. 23, ll. 21-24; p. 24, l. 1).

>                                       CHRIS ARMES, Plaintiff
>
>                               By:     s/ Lance A. Raphael
>                                       One of Plaintiff's Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.782.5808 (p)
312.377.9930 (f)

Paul F. Markoff (paul@markleinlaw.com)
Markoff Leinberger LLC
180 W. Washington St., Ste. 700
Chicago, IL 60602
312.726.4162 (p)
312.277.2507 (f)

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this *Plaintiff's Civil L.R. 56(B)(1)(C) Statement of Material Facts in Support of Cross-Motion for Summary Judgment* on the following electronically by using the CM/ECF system on this 12th day of April, 2011:

James K. Borcia
Tressler LLP
233 S. Wacker Dr., 22nd Fl.
Chicago, IL 60606

/s Lance A. Raphael