UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

CHRIS ARMES,

        Plaintiff,

        v.                                            Case No. 08-C-0244

SOGRO, INC.,
d/b/a Budget Host Diplomat Motel,

        Defendant.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO APPROVE CLASS NOTICE (DOC. 99)

Chris Armes sues Sogro, Inc. for displaying more than the last five digits of his credit card number on a receipt issued at the Budget Host Diplomat Motel on April 30, 2007, in violation of the Fair and Accurate Credit Transaction Act (FACTA). On March 29, 2011, this court granted Armes's motion for class certification for those customers whose credit cards were processed by Sogro after December 4, 2006, and whose credit card receipts displayed more than five digits.[1]

As a result, Armes moves for court approval of class notices. However, Sogro objects to some content of Armes's proposed notices, the methods used to provide notice to the class and the allocation of costs. For the reasons set forth below, the motion to approve class notice will be granted in part and denied in part, and Armes will be directed to amend the class notice consistent with this opinion.

---

[1] FACTA, an amendment to the Fair Credit Reporting Act, provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Failure to comply with § 1681c(g) subjects a person to actual damages or statutory damages from $100 to $1000 for willful violation of the statute. 15 U.S.C. § 1681n(a)(1)(A); *see also Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 622 (7th Cir. 2007). For cash registers in use prior to January 1, 2005, § 1681c(g)(1) became effective on December 4, 2006. *See* 15 U.S.C. § 1681c(g)(3)(A).

Federal Rule of Civil Procedure 23(c)(2)(B) provides seven requirements, including that the notice state (1) the nature of the claim; (2) the definition of the certified class; (3) the class claims, issues, or defenses; (4) that the class member may appear through his or her own attorney; (5) that the class member may opt out; (6) the time and manner for opting out; and (7) the binding effect of a judgment on all class members.

As an initial matter, Sogro argues that Armes modified the class definition improperly by stating an end date for the class period (April 17, 2008). The court's class certification order provided that the class shall consist of:

> All persons to whom Sogro, Inc. d/b/a Budget Host Diplomat Motel provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit card or debit card number.

(Doc. 75 at 2.) Armes's proposed notice of class action to be delivered by U.S. Mail would be addressed to: "All persons who made a credit or debit card payment to Sogro, Inc. d/b/a Budget Host Diplomat Motel ("Defendant") from December 4, 2006 through April 17, 2008 ("Class" or "Class Members".)" (Doc. 99 Ex. 5 at 1.) The notice defines a class period with the same dates and says class members are determined by that period. (Doc. 99 Ex. 5 ¶¶ 5, 6.) Similarly, the proposed notices for publication in newspapers and posting on a Consumer Advocacy Center website refer to a class period starting December 4, 2006, and ending April 17, 2008. (Doc. 99 Exs. 6-8.) However, notwithstanding such references in the proposed notices to a class period ending on April 17, 2008, the definition of the certified class is later quoted verbatim (except for a missing "t" on "Budget"[2]) within three of the notices, with no inclusion of an end date.

---

[2]This typographical error on each form must be corrected before the notices are finalized.

2

The end date for the class period arose from the testimony of Sogro's owner, Joseph Solus, who stated at deposition that his motel became FACTA compliant on the day he learned of the lawsuit, which was April 17, 2008. (Doc. 99 Exs. 1, 2.) Armes and his counsel have taken Solus at his word and presume that there were no FACTA violations after April 17, 2008. Further, during discovery Sogro objected to a request for identification of persons to whom it issued sales receipts after December 4, 2006, as "overly broad and unduly burdensome" (Doc. 107 Ex. 1 at 6), and Armes represents that Sogro never provided any discovery (such as credit card receipts or motel registration cards) regarding post-April 17, 2008, class members. If there are no post-April 17, 2008, class members, then there is no reason to give notice to motel guests who stayed at the Budget Host after that date, as they would not be class members.

However, what if Solus lied or was honestly mistaken at his deposition and Budget Host did not become FACTA-compliant until April 18 or 20, 2008? Then the proposed notices are addressed to a smaller group of plaintiffs than the definition of the certified class. There *could* be class members who would be bound by a judgment in this case, but who might disregard the notice because of the end date. And, at the least, the difference between the closed period given in the notice and the open-ended class period in the class definition certified by this court could be confusing to the recipient. Thus, unless the parties stipulate to amending the class definition to a closed period ending on April 17, 2008, the notices should delete the references to that date.

The court notes that it would allow an amendment of the class definition to include the end date if the parties filed a stipulation before notice to the class is mailed. Therefore,

3

the parties will be given seven days to file any stipulation respecting such an amendment before the class notice is finalized.

Deletion of the end date does not require the additional expense Armes envisions. Notwithstanding deletion of the date, there is no reason to alter the list of those to whom notice should be mailed. Armes says he has a list of 666 guests with a last-known address, and those guests stayed at the Budget Host on or before April 17, 2008. It appears that during discovery Sogro did not provide any names and addresses of motel guests who received receipts with more than five digits on them subsequent to that date; the court will not require Armes to locate names and addresses that Sogro did not provide regarding people who are not class members.

Sogro objects to the content of Armes's notice on four additional points. It contends that recipients of direct mail notices should be informed that they "may be" class members, rather than that they "are" class members; newspaper and website notices should not include language stating that a class member choosing to appear would do so at his or her own expense; the website hypertext link should connect class members to all the pleadings; and the website notice does not indicate how a class member can opt out.

The direct-mail notice proposed by Armes states: "If this Notice is addressed to you, Defendant's records indicate that you are a Class Member." (Doc. 99 Ex. 5 at 1.) Sogro provided discovery indicating that after December 4, 2006, 1,118 people were issued receipts with more than five of their credit card numbers. The last-known addresses were provided for 666 of those people. It is highly likely that all 666 people who will be sent direct mail notice are class members, but it is possible that incorrect persons could receive notice addressed to them because it is probable that some have moved or

4

for other reasons. Nevertheless, the statement does not confirm that the recipient *is* indeed a class member. Instead, the proposed notice says that Sogro's *records so indicate*. Hence, the language need not be changed from "are" to "may be."

Regarding the language concerning a class member's expense, Sogro contends that there is no cost for an appearance. That is correct; a class member is not charged for appearing in a case. But a class member who hires an attorney to file an appearance will likely be charges for doing so. Although it is possible that the client may find representation at no cost, there is no harm in warning class members that any attorney they hire is at their own expense. Thus, where the notices warn class members that attorneys they hire are at their own cost (such as in the website notice, Exhibit 7 ¶ 8), the notices are acceptable. However, the language in Exhibit 6 (the newspaper notice) is less clear, suggesting that an appearance, without more, generates an expense: "You may enter an appearance in the case at your own expense; otherwise you will be represented by Plaintiff's attorneys." (Doc. 99 Ex. 6.) Therefore, that notice must be revised to clarify that it is the attorney, not the appearance, that may cause expense. Accordingly, the notice must be altered by deletion of "at your own expense" from the sentence as written. In addition, Sogro's suggestion that the sentence start: "You *or your attorney* may enter an appearance" is a good one. Armes may then add a sentence warning that any *attorney* hired by the class member is at the class member's expense.

Rule 23(c)(2)(B)(iii) provides that the notice must include a statement of the "class claims, issues, or defenses." The website notice (Doc. 99 Ex. 7) contains a short description of the case, claims, and defenses. In addition, it contains links to the complaint, answer, the decision certifying the class, and the publication notice. The

5

complaint includes the claims asserted and issues addressed, and the answer sets forth the defenses Sogro has raised. Sogro, though, asks for links to "all pleadings and not just the current Complaint." (Doc. 103 at 6.) As a link to the answer already exists, the pleadings are covered. To the extent that Sogro believes that links to the entire docket are required, Rule 23 does not support that belief. Moreover, the website notice advises the reader to contact plaintiff's counsel for further information. If a viewer of the website notice desires to see the docket, he or she can contact plaintiff's counsel as directed.

According to Sogro, the website notice also fails to provide opt-out instructions. However, specific and sufficient directions for opting out are provided in paragraph 12. (Doc. 99 Ex. 7 ¶ 12.) Nothing further needs to be added on that topic.

Next, how must notice be provided to the 1,118 class members? Armes suggests certified mail to the 666 class members whose last-known addresses were provided by Sogro in discovery, and a combination of the following methods to reach the remaining class members: publication in 156 Wisconsin newspapers; publication in forty-nine Chicagoland newspapers; notice on a Consumer Advocacy Center website; and a print version of the notice at the registration desk and each public entrance to the motel. Sogro opposes publication by newspaper and notice posted at the motel.

Rule 23(c)(2)(B) provides that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Direct, individual notice "must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Armes does not dispute that he must mail notice to the 666 persons with last-known addresses.

6

Apparently, Armes has credit card numbers and many names for the remaining 452 known class members. Sogro contends that Armes should search for the addresses for the remaining class members using the internet or by contacting credit card companies. Armes responds that its proposed methods of notice are reasonable and those proposed by Sogro are not.

Publication in a newspaper as to remaining class members is not foreclosed. "When individual notice is infeasible, notice by publication . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004). Other district courts within the Seventh Circuit have approved a combination of individual notice to those whose addresses are known and publication in newspapers or on websites or postings at the defendant's business for those whose addresses are unknown. *See In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, *8 (N.D. Ill. Jan. 31, 2012); *Rogers v. Khatra Petro, Inc.*, No. 2:08 cv 294, 2011 WL 611873 (N.D. Ind. Feb. 14, 2011); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 144-48 (N.D. Ill. 2010). The court retains broad discretion in fashioning notice in each case, subject to the reasonableness standard; there is no single formula. *Shurland*, 271 F.R.D. at 144-45.[3]

The question here is whether additional addresses can be obtained through "reasonable effort." Armes contends that obtaining addresses for the 452 remaining class members would be time consuming and cost prohibitive, involving a review of each receipt to obtain the first six digits of the credit card number (the "PAN"), matching the PAN to a list of PANs for financial institutions nationwide, issuing subpoenas to each financial

---

[3] In "this age of electronic communications, newspaper notice alone is not always an adequate alternative to individual notice. The World Wide Web is an increasingly important method of communication, and . . . an increasingly important substitute for newspapers." *Mirfasihi*, 356 F.3d at 786.

7

institution to obtain the identity and contact information for the cardholders, possibly filing a motion to compel in each relevant jurisdiction if a financial institution does not comply with the subpoena, and compiling the list of class member names and contact information. Armes estimates the cost of this process as approximately $100,000. Further, following Sogro's opposition brief, Armes attempted an internet search on whitepages.com for five class members for whom it does not have any address. Three of those searches revealed over 100 persons with the same name. It appears Armes does not even have a city or state to narrow the searches for the 452 remaining class members.

The cost of obtaining addresses is not a specific factor for this court to consider. *See Eisen*, 417 U.S. at 176 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs."). Instead, the Supreme Court has focused on the need for "reasonable effort." *See id.*; *Kaufman v. Am. Express Travel Related Servs. Co.*, No. 07 C 1707, 2010 WL 3365921, *3 (N.D. Ill. Aug. 19, 2010).

*Eisen* did not address what constitutes reasonable effort. However, recently a magistrate judge within the Seventh Circuit found steps similar to those Armes suggests (tracking PANs and issuing subpoenas to numerous financial institutions) to be unreasonable. Thus, for those class members whose names and addresses were unknown he permitted notice by publication plus notices posted at the gas pumps and inside the store of the gas station defendant. *Rogers*, 2011 WL 611873, at *1-*2. Here, seeking addresses by subpoena from numerous separate credit or debit card issuers would be unreasonable. The steps far exceed a comparison of internal lists or data of the defendant that could generate addresses.

8

In addition, unless a particular name is unusual, internet searches would be futile because of the great number of search results of people nationwide. Narrowing such search results would entail excessive effort, with little to no benefit. And although highly unusual names may generate more narrow search results, the job of sifting through the search results to find the correct addresses would still be time consuming. Consequently, Armes will be required to send individual notice to those class members for whom he has addresses, but he will be directed to publish notices in print and on websites directed to persons for whom he does not have addresses.

Sogro contends that there is no evidence that publication in Wisconsin and Chicagoland papers will be effective, because it is unclear where guests for the Budget Host come from. But the court is persuaded that Armes's proposed publications are an acceptable range for this case. Publication will occur in 206 papers throughout Wisconsin and the Chicago area. The court takes judicial notice that the Lake Geneva area is popular with Chicago-area residents. Therefore, those publications in particular seem well-chosen. In a case involving a smaller motel in the midwest, placing notice in nationwide publications would be an unreasonable effort.

Next, Sogro argues that posted notice at the motel is unnecessary and would be ineffective and detrimental to its business. However, it is highly possible that today's repeat customers of the Budget Host may be class members. The proposed notice for posting on site does not state that Sogro did anything illegal or even that Sogro's actions were the basis of the lawsuit. Instead, it states only that someone who used a credit or debit card at the motel after December 4, 2006, may be a class member in a lawsuit, and it provides an internet address and telephone number for more information. The court

9

finds that posting such a notice is part of the best notice practicable under the circumstances, *see Rogers*, 2011 WL 611873, at *1-*2, and that the minimal harm of posting such a notice for sixty days (the same time frame given by the other notices) is far outweighed by the need for such notice under Rule 23(c)(2). However, as the posted notice does not include the date on which the opt-out period ends, the notice must advise the viewer to visit the website or contact the phone number by the certain date sixty days after initial posting.

Finally, Sogro argues that Armes should pay for the costs of providing notice. Armes agrees, with the exception of the cost to print a black and white notice displayed at the entrances and at the desk of the Budget Host motel. Although the posting of notices at the Budget Host by Sogro would be an easy, inexpensive act, the Supreme Court has stated that "the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." *Eisen*, 417 U.S. at 179. The cost for Sogro to print the notice and to post it at the motel would be minimal, whereas Armes will likely have to pay someone to go to the motel to do so. But that is the requirement of *Eisen*. The court notes that Sogro must allow Armes's representative onto its property to post the notices. Perhaps the parties can confer and work out how to minimize the costs of such postings.

Now, therefore,

IT IS ORDERED that Armes's motion to approve class notice (Doc. 99) is granted in part and denied in part as set forth above.

IT IS FURTHER ORDERED that the parties determine within seven days whether they stipulate to amend the class definition by adding an end date of April 17, 2008.[4]

IT IS FURTHER ORDERED that Armes amend the class notice forms consistent with this opinion and file them with the court within fourteen days of the date of this order; Sogro will have seven days following receipt of Armes's edits within which to comment on the changes; any alterations and objections to the form notices shall be limited to the revised language required by this decision. Following resubmission, the parties should await court approval before notices are sent, published, or posted.

The court encourages the parties to confer and stipulate regarding the revisions to the notices, to eliminate the need for Sogro's response period and allow the notices to go out more quickly.

IT IS FURTHER ORDERED that the court's consideration of the pending cross-motions for summary judgment (Docs. 69 and 79) is stayed until expiration of the class notice period, to give class members an opportunity to be heard.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

---

[4] If the court approves the amendment the class definitions in the various notices would be revised accordingly and the end date of April 17, 2008, would not need to be deleted.