UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CHRIS ARMES,

        Plaintiff,

        v.                                  Case No. 08-C-0244

SOGRO, INC.,
d/b/a Budget Host Diplomat Motel,

        Defendant.

---

DECISION AND ORDER DENYING SOGRO INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. 69), DENYING ARMES'S MOTION FOR SUMMARY JUDGMENT (DOC. 79) AND SETTING A SCHEDULING CONFERENCE

Chris Armes sues Sogro, Inc., claiming that Sogro generated customer receipts displaying more than the last five digits and expiration dates of credit cards, in contravention of the Fair and Accurate Credit Transaction Act (FACTA), 15 U.S.C. § 1681c(g). Armes asserts that on April 30, 2007, at the Budget Host Diplomat Motel in Lake Geneva, Wisconsin, Sogro violated FACTA by printing a receipt on which his entire credit card number was displayed. Because Sogro's practice in issuing credit card receipts was uniform, Armes filed a class action lawsuit seeking to represent all consumers who received receipts from Sogro in violation of FACTA. Sogro estimates that it processed 2500 credit and debit card transactions between December 4, 2006, (the date FACTA became effective) and March 24, 2008, when it learned of FACTA and immediately acted to conform its receipts to FACTA demands.

On March 29, 2011, this court certified the following class in this case: "All persons to whom Sogro, Inc. d/b/a Budget Host Diplomat Motel provided an

electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit card or debit card number." (Doc. 75 at 2, 15.) The court approved the form of notice to be sent to class members, and the time for class members to opt out expired in August 2012.

The parties have filed cross-motions for summary judgment, and now that the opt-out time has expired the motions are ready for decision.[1] Sogro contends that Armes has no standing, Armes's use of his credit card for a business-related purpose dooms his claim, and the class cannot seek damages because FACTA was not violated willfully. Armes, on behalf of himself and the class, contends that the undisputed evidence establishes a willful violation of FACTA.

Summary judgment is proper if the depositions, documents or electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials show no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating entitlement to summary judgment. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of its cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes

---
[1] Sogro requested oral argument on its motion. However, the court finds that oral argument is not necessary.

the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of a factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. To establish that a question of fact is "genuine," the nonmoving party must present specific and sufficient evidence that, if believed by a jury, would support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249.

Because the parties in this case filed cross-motions for summary judgment, many facts are not contested. Nevertheless, when both parties have moved for summary judgment, each is required to show that no genuine dispute of material fact exists, taking the facts in the light most favorable to the party opposing each motion. If a genuine issue of material fact remains, neither party is entitled to summary judgment. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

## FACTS

Sogro is a corporation that operates a single, twenty-three-room motel called the Budget Host Diplomat Motel, in Lake Geneva, Wisconsin; operating the motel is Sogro's

3

only business.  (Sogro's Local Rule 56.1 Stmt. of Material Facts ("Doc. 70") ¶¶ 1, 2[2]; Def.'s Civil L.R. 56(b)(2)(B) Resp. to Pl.'s Am. Local Rule 56 Stmt. of Facts ("Doc. 91") ¶ Add'l 1.[3])  Joe Solus has owned Sogro and operated the Budget Host since 1997. (Doc. 70 Ex. ¶ 3.)  Solus and his ex-wife, Donna, have been the only owners of Sogro; Solus became the sole owner after their divorce in September 2007.  (Doc. 70 ¶¶ 4, 5.) Other than Joe and Donna Solus, the only other employees of Sogro were room-cleaning people and, occasionally, the Soluses' son.  (Doc. 78 Ex. A at 17.)  During 2006 to 2008, Sogro typically charged in the range of $46 to $98 for a room, depending on the time of year for the stay. (Doc. 70 ¶ 10.)

At all relevant times, Sogro accepted credit and debit cards, including Visa and Discover cards.  (Pl.'s Am. Civil L.R. 56(b)(2)(B) Resp. to Def.'s Local Rule 56 Stmt. of Facts ("Doc. 85") ¶ Add'l 4.[4])  When a customer paid for a room charge by credit or debit card, Sogro's practice was to give each customer a receipt for the charge.  (Doc. 91 Ex. A ¶ 7; Doc. 78 Ex. A at 153.)

In 1999, Sogro contracted with Paymentech to process credit card transactions at the Budget Host.  Sogro was to comply with Paymentech's Operating Guide and

---

[2]Unless otherwise noted, a proposed statement of material fact was undisputed by the opposing party. The court notes that Sogro's statement of fact states that it "owns a single restaurant" doing business as the Budget Host Diplomat Motel. (Doc. 70 at 1.) However, the word "restaurant" appears to be a mistake, as Solus's affidavit on which the proposed finding is based states that Sogro operates a motel (Doc. 70 Ex. A ¶ 2) and through the course of these proceedings the property has always been discussed as a motel rather than a restaurant.

[3]Doc. 91 contains two sets of numbered paragraphs.  The set responding to Armes's proposed statements of fact are called "Resp. #" and those setting forth Sogro's proposed additional material facts are called "Add'l #."

[4]Similar to Doc. 91, Doc. 85 contains two sets of numbered paragraphs.  The set responding to Sogro's proposed statements of fact are called "Resp. #" and those setting forth Armes's proposed additional material facts are called "Add'l #."

4

Rules. Under the contract, "Rules" is defined as "rules and regulations . . . of VISA, Mastercard or any other Card associations for which Company provides Card processing pursuant to this Agreement." (Doc. 85 ¶ Add'l 1.) The contract signed by Solus states that Sogro's "signature on this Agreement constitutes the acknowledgment that Merchant has received, has reviewed and understands the Operating Guide." (Doc. 91 Ex. A Ex. 1 at FD 000003.) Right above the signature line for Sogro, the contract states that "[b]y signing below, Merchant . . . acknowledges that Merchant has read and understands this Agreement and Operating Procedures and agrees to be bound by their terms." (Doc. 91 Ex. A Ex. 1 at FD 000008.) At all times relevant to this lawsuit, Sogro also contracted with Paymentech to process debit card transactions at the Budget Host. (Doc. 85 ¶ Add'l 3.)

Armes stayed at the Budget Host on April 30, 2007; it was the only time he stayed there. (Doc. 70 ¶ 17.) When he stayed at the Budget Host, Armes was employed by Benefit Health Insurance Company as a traveling salesperson. (Doc. 70 ¶ 18.) Armes was in Lake Geneva for business purposes, giving presentations to sell magnetic therapy to local residents. (Doc. 70 ¶ 19; Doc. 85 ¶ Resp. 19.) He paid for his room at the Budget Host with his personal Visa debit card and was not reimbursed by his employer for the charge. (Doc. 70 ¶ 20; Doc. 85 ¶ Resp. 20, ¶ Add'l 42.) Sogro provided Armes with an electronically-printed receipt that displayed the entire number and expiration date of his debit card. (Doc. 85 ¶ 5.)

Solus says that he was not aware of any requirement to truncate card numbers or expiration dates for credit or debit card receipts, or of FACTA, until he was served

5

with the complaint in this case. (Doc. 70 Ex. A ¶ 8; Doc. 91 ¶ Add'l 6[5].) Shortly after Solus was served with this lawsuit, he contacted Sogro's credit card processor to inquire why the credit card terminal printed the entire credit card number on the customer's receipt. (Doc. 70 ¶ 11.) The processing company was able to perform a software update on Sogro's credit card terminal over the phone. (Doc. 70 ¶ 12.) After the update was implemented, Sogro's credit card terminal truncated properly the credit card numbers and expiration dates from all printed receipts. (Doc. 70 ¶ 13.) This software update took approximately five minutes and was performed at no cost or inconvenience to Sogro. (Doc. 70 ¶ 14.) According to Solus, had he "been aware of FACTA earlier, [he] would have taken action to remedy this issue immediately." (Doc. 70 Ex. A ¶ 8.) Sogro obtained no benefit from not being in compliance with FACTA. (Doc. 70 ¶ 16.)

While an owner of Sogro, Donna was unaware of any requirement that customer credit card numbers and expiration dates be truncated. (Doc. 70 ¶ 9.)

In March 2004, Paymentech created and mailed to "certain merchants" notices that stated: "Visa, MasterCard, the federal government, as well as numerous states have initiated regulations and legislation that require merchants to have point-of-sale terminals that assist in minimizing fraud." (Doc. 78 Ex. B ¶¶ 4, 5, Exs. 1, 2.) The notices then set forth Visa and MasterCard requirements of printing only the last four digits of the account number and suppressing the expiration date on the customer's

---

[5]Although Solus *says* he was unaware of any truncation requirements before being served with this lawsuit, Armes disputes whether Solus *was* unaware. (*See* Pl.'s Civil L.R. 56(b)(3)(B) Resp. to Def.'s Stmt. of Add'l Facts ("Doc. 101") ¶ 6.)

6

receipt. (*Id.*) The notices added: "ACTION REQUIRED. If your terminal prints the full cardholder number on the customer's receipt, please call the Paymentech Help Desk phone number on your terminal so your software can be updated." (*Id.*)

In or about August 2004, Paymentech sent a letter to those merchants whose records at Paymentech showed they were using point-of-sale equipment that was not compliant with truncation requirements. (Doc. 78 Ex. B ¶ 8.) The letter read "**URGENT** Credit Card Account Number Truncation Requirements" in the subject line. (Doc. 78 Ex. B Ex. 5.) The body of the letter stated that "Visa and MasterCard, as well as numerous states, have initiated regulations and legislation that require merchants to have fraud-deterrent point-of-sale terminals" and indicated the Visa/MasterCard requirements of printing only the last four digits of the account number on the customer's receipt. (*Id.*)

In or about September 2004, Paymentech mailed to all merchants a document titled "industry wire" that included a heading "Account Number Truncation Suppression Requirement Nears" and the text that the next year Visa and MasterCard would require suppression of all but the last four digits of the card number on a receipt. (Doc. 78 Ex. B ¶ 6, Ex. 3 at 2.)

The Merchant Card Processing Statement for 2/01/08-2/19/08 that was sent from Paymentech to Sogro advised:

> Government Mandated Equipment Upgrade – are you in compliance? To reduce credit card fraud and protect cardholder account information, U.S. Government truncation legislation was passed December 4, 2003. As a result, all point of sale devices in use on January 1, 2005 must be in compliance by December 4, 2006.

7

(Doc. 85 ¶ Add'l 16.)  Sogro admits to receiving this statement.  (Doc. 85 ¶ Add'l 17; Def.'s Resp. to Pl.'s Stmt. of Add'l Material Facts ("Doc. 92") ¶ 17.)

Prior to October 2007, Paymentech's website stated:  "You may already be aware that with the growing rate of identity theft and fraud, many states have passed a legislation requiring merchants to comply with 'account truncation' rules."  (Doc. 84 ¶ 45.)

In October 2004, Discover required its merchants to truncate the card number and expiration dates on its customers' electronically printed receipts.  (Doc. 84 ¶ 23.)  The March, April, and September 2007 statements sent to Sogro by Discover stated that "[b]eginning April 16, 2007, the new Merchant Operation Regulations will be available for download by visiting DiscoverNetworkOpsRegs.com."  (Doc. 84 ¶ 24.)  Under the terms of the New Merchant Agreement available April 2007, Sogro was required to truncate the card number and expiration dates on its customers' electronically printed receipts.  (Doc. 84 ¶ 25.)

Prior to August 2010, Sogro was a member of the Wisconsin Hotel and Lodging Association ("WHLA").  (Doc. 85 ¶ Add'l 25; Doc. 78 Ex. E ¶ 3.)  In the summer of 2005, WHLA sent Sogro the *Inn Touch Guide*, which contained an article regarding a merchant's need to truncate information on the receipts it provided to its customers.  (Doc. 85 ¶¶ Add'l 27, 28; Doc. 92 ¶¶ 27, 28.)  Sogro acknowledges receipt of that *Inn Touch Guide*.  (Doc. 84 ¶ 28; Doc. 91 ¶ Resp. 28; Doc. 78 Ex. A at 104.)  In the winter of 2006, WHLA sent Sogro the *Inn Touch Magazine*, which contained an article regarding compliance with the Payment Card Industry Data Security Standards.  (Doc. 85 ¶¶ Add'l 29, 30; Doc. 92 ¶¶ 29, 30.)

8

Solus testified at deposition that he did not bother to read Sogro's statements from Paymentech other than to see the numbers, and he does not read any notices contained in statements from Paymentech and other credit card companies. (Doc. 85 ¶ Add'l 33.) Solus stated at deposition that he believed it was the credit card processing company's responsibility to ensure the machine was compliant with law. (Doc. 85 ¶ Add'l 37; Doc. 92 ¶ 37.) Sogro never researched whether there were any regulations it was to comply with and made no effort to learn the rules it was obligated to follow, except that when it switched to a new processor, PNC (apparently after this lawsuit was filed), it inquired with PNC whether Sogro was compliant with all credit card related laws. (Doc. 85 ¶¶ Add'l 36, 39; Doc. 92 ¶ 36, 39.) Solus never would examine the receipts he personally received to determine whether the credit card information was truncated. (Doc. 85 ¶ Add'l 38.)

Armes has never been the victim of identity theft resulting from any conduct of Sogro. (Doc. 70 ¶ 21.) And he has never investigated whether he has been the victim of identity theft. (Doc. 70 ¶ 22.) Moreover, Armes did not change his debit card number or acquire his credit report to find out if he was a victim of identity theft. (Doc. 70 ¶ 23.) When Armes visited Budget Host, he was not aware of FACTA. (Doc. 70 ¶ 25.) He learned of FACTA after being notified by his attorney around October 2008. (Doc. 70 ¶ 24.) After his attorney told him about FACTA, Armes reviewed his debit card receipts and found some that were not compliant. (Doc. 70 ¶ 26.) The receipt that Armes received from Sogro, has been in his possession or the possession of his attorney since his stay at the Budget Host. (Doc. 70 ¶ 33.)

Sogro admits that it violated FACTA as to all members of the class. (Doc. 84 ¶ 35; Doc. 91 ¶ Resp. 35.) No one other than Armes has ever complained to Sogro that Sogro printed the entire credit card number on a receipt or asserted a claim against Sogro for doing so. (Doc. 70 ¶¶ 31, 32.)

Armes admits that he is not seeking any actual damages. (Doc. 85 ¶ Resp. 28.)

ANALYSIS

FACTA, an amendment to the Fair Credit Reporting Act ("FCRA"), provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Failure to comply with § 1681c(g) subjects a person to actual damages or statutory damages from $100 to $1000 for willful violation of the statute. 15 U.S.C. § 1681n(a)(1)(A); *see also Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 622 (7th Cir. 2007). For cash registers in use prior to January 1, 2005, FACTA became effective December 4, 2006. *See* 15 U.S.C. § 1681c(g)(3)(A).

A. Sogro's Motion for Summary Judgment

In its motion for summary judgment, Sogro asserts three reasons why the court should grant summary in its favor: standing, business purpose, and willfulness.

1. Standing

Sogro argues that Armes lacks standing because he neither alleged nor suffered any actual harm or risk of actual harm. It is undisputed that Armes suffered no identity theft or inconvenience in changing card numbers because of the FACTA violation and that he seeks only statutory damages.

10

Generally, to fulfill Article III standing requirements a plaintiff must show that (1) he suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000). Article III standing may exist "solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). Thus, when Congress creates a legally protected interest through a statute, a plaintiff may demonstrate Article III standing by showing that he or she suffered an injury to that right. *Id.*

Under FACTA, private citizens may sue for negligent or willful FACTA violations. *See* 15 U.S.C. §§ 1681n, 1681o. In the case of a negligent violation, the plaintiff may recover any actual damages plus costs of suit and reasonable attorney's fees. § 1681o(a). For a willful violation, the plaintiff is entitled to recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," plus costs of suit and reasonable attorney's fees. 15 U.S.C. § 1681n(a)(1)(A), (a)(3). Additionally, a plaintiff may recover punitive damages for a willful violation. 15 U.S.C. § 1681n(a)(2).

In 2007, the Supreme Court interpreted § 1681n's willfulness provision when a plaintiff did not allege actual harm and sought only statutory damages. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201 (2007). In *Safeco*, the Supreme Court noted that one plaintiff there claimed no actual harm but sought only statutory and punitive damages under § 1681n. *Id.* at 54. The Court did not first turn to standing or

11

suggest that if plaintiff alleged no actual harm he could not sue. Instead, the Court turned to the meaning of "willfully." *See id.* at 56-57.

Similarly, the Seventh Circuit did not mention any standing issue for a plaintiff who sought to represent a class of consumers seeking statutory damages rather than compensatory damages in an action under the FCRA. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 951, 952-53 (7th Cir. 2006). The court noted that laws like the FCRA provide for modest statutory damages where the consumer's actual loss is small and difficult to quantify. *Id.* Subsequently, the Seventh Circuit commented that because the FCRA provides for awards of statutory damages where a violation is willful, "actual damages are not necessarily a precondition for suit." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 622 (7th Cir. 2007).

Through FACTA, Congress created a legal right to electronically printed receipts that truncate the consumer's credit card number. Receiving a receipt that fails to truncate the card number violates this legally protected right, which results in an injury sufficient to confer standing under Article III. *See Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007) ("Being handed a receipt that omits certain of one's credit card information is a legally protected interest created by FACTA. When one is handed a receipt that does *not* omit the offending information, one suffers an injury. Such an injury is sufficient to confer standing." (citation omitted)).

Sogro's citation to *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046 (E.D. Mo. 2009), is not on point. The case did not involve a FACTA violation but instead involved allegedly inadequate security measures that allowed unauthorized persons to possibly access the plaintiff's information. The court found that so "many 'if's' would

12

have to come to pass" for plaintiff to suffer injury that standing was lacking. *Id.* at 1053. Here, however, there are no such "if's." FACTA entitled Armes to a receipt truncating his credit card number and Sogro printed the full number. As such, Armes has standing.

2.  Business-Related Purposes

Next, Sogro argues that summary judgment is proper because FACTA limits recovery of statutory damages to consumer cardholders and does not allow for such damages for business card holders or for business related transactions. (Doc. 71 at 9). The court addressed this contention during class certification, finding it "unconvincing":

> Armes used his personal debit card in the credit transaction at issue; thus, his personal card information was subject to identity theft. Personal debit cards are personal debit cards no matter the purpose of the expense or whether someone's mother, friend, or employer ends up paying the bill or reimbursing the cardholder.

(Doc. 75 at 5.)

Section 1681n provides a private right of action for *consumer* cardholders to enforce FACTA's requirements. *Follman v. Village Squire, Inc.*, 542 F. Supp. 2d 816, 819 (N.D. Ill. 2007). Armes was a consumer cardholder. The purpose of his card use is irrelevant; the danger of identity theft by Sogro's FACTA violation ran to Armes and not a corporate entity.

3.  Willfulness

Sogro contends that it could not have violated FACTA willfully because "during the relevant time period Sogro had no knowledge of FACTA or the credit card truncation requirements." (Doc. 71 at 8). Additionally, says Sogro, none of Armes's allegations or evidence demonstrates that it acted willfully.

13

In *Safeco*, the Supreme Court held that willfulness as used in the penalty section of the FCRA, 15 U.S.C. § 1681n, "covers a violation committed in reckless disregard of the notice obligation." 551 U.S. at 52. Such recklessness is defined as generally understood in the common law: "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Put another way, a company subject to the FCRA (including FACTA) acts in reckless disregard if "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Willfulness under FACTA requires an objective inquiry into the actor's understanding, meeting a standard of "something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008).

In light of this standard for willfulness, Sogro's motion for summary judgment must be denied. Taking the facts in Armes's favor, Sogro (1) received at least two notices from Paymentech stating that federal law and Visa and MasterCard rules required point-of-sale terminals to minimize fraud by printing only the last four digits of the account number on receipts, (2) received a Paymentech notice stating that in 2005 Visa and MasterCard would require suppression of all but the last four digits of the card number on a receipt, (3) received an "urgent" letter from Paymentech about state legislation and Visa and MasterCard requirements of card number truncation, and (4) received the *Inn Touch Magazine* that discussed truncation. In addition, Sogro received (5) a notice in or around February 2008 discussing the equipment upgrade mandated by federal truncation legislation, and (6) the 2005 *Inn Touch Guide* discussing truncation.

14

Moreover, Solus signed the Paymentech contract stating that he knew Visa and MasterCard rules applied, and that those rules required truncation by December 2006.

A reasonable jury could find that Solus saw some or all of these truncation notices when he looked at bills for the "numbers" or opened his mail; Arms has presented evidence sufficient to support a reasonable inference that Sogro received notice. But actual knowledge is not even required for Armes to establish willfulness; recklessness is the standard. A reasonable jury could find that Solus's failure to pay attention to the rules that applied to him and to read notices on his bills, notices received from Paymentech about truncation, and publications he received concerning truncation constituted reckless disregard—actions entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known and running a risk of violating the law substantially greater than the risk associated with negligence. Thus, a reasonable jury could find that Sogro acted willfully when it printed the full card number on Armes's and other class members' receipts.

Sogro is correct that many of Armes's exhibits are not as strong as Armes portrays them. The affidavit of Paymentech's Benjamin Wong does not specifically indicate delivery of the notices to Sogro. Wong attested that some notices were sent to some merchants, some were sent to all merchants, and the "urgent" notice was sent to those merchants whose records indicated they were noncompliant. Though none of these statements confirm that Sogro was sent two of the notices or received the notices, a reasonable jury could infer that Sogro did receive some or all of them.

Additionally, Sogro points out that the notice it admits receiving, in or about February 2008, post-dated Armes's stay at the Budget Host. But the post-dating does

15

Case 2:08-cv-00244-CNC   Filed 03/18/13   Page 15 of 19   Document 120

not make a difference for present purposes because the evidence suggests that other notices reached Sogro as earlier as 2004 or 2005. Moreover, Solus contends that if he had received notice prior to his receipt of the complaint in this lawsuit he would have taken action. As he took no action after the February 2008 notice, a reasonable jury could infer that he had also received prior notices yet took no action.

Sogro submits that these notices would not necessarily have informed him of FACTA, as they mention Visa and MasterCard and state-law rules about truncation. But that argument fails. Some of the notices did reference federal law or regulations or warned that there could be legal ramifications for failure to truncate card numbers. In addition, § 1681n references willful failure to comply with requirements imposed under FCRA, of which truncation was one. Truncation, not FACTA's name or existence, is what is at issue. Taking the facts in Armes's favor, Solus's attitude toward truncation was the same for legal requirements as it was for Visa or MasterCard or state-law requirements: he just did not care about truncation, whatever the source for it was.

Sogro quotes heavily from *Gardner v. Appleton Baseball Club, Inc.*, No. 09-C-705, 2010 WL 1368663 (E.D. Wis. Mar. 31, 2010), a case dismissed by Judge William C. Griesbach. *Gardner* is easily distinguished. The *Gardner* complaint charged that the Timber Rattlers baseball club willfully violated FACTA because other company's complied with FACTA and various guidance on FACTA existed. Judge Griesbach found that the complaint failed to meet the standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), because its general allegations could apply to any merchant violating FACTA; the allegations were not specific to the Timber Rattlers' intent. For instance,

16

there was no allegation that guidance on FACTA was actually sent to the Timber Rattlers rather than just being available publicly.

Conversely, here Armes has presented enough evidence specific to Sogro to raise a genuine issue of material fact as to whether the defendant's violation was willful. Indeed, *Gardner* supports Armes's case: in noting that the complaint in *Gardner* gave no reason to infer willfulness merely because a FACTA violation occurred, the court suggested that a merchant's "cavalier attitude towards credit card privacy or toward regulatory compliance in general" could change the outcome. Here, a reasonable jury definitely could conclude that Solus, and thus Sogro, maintained a cavalier attitude toward responsibilities regarding safety of credit card numbers and cardholders' rights of customers.

Similarly, *Keller v. Macon Cnty. Greyhound Park, Inc.*, No. 3:07-CV-1098-WKW, 2011 WL 1559555 (M.D. Ala. Apr. 25, 2011), *aff'd*, 464 Fed. App'x 824 (11th Cir. 2012), and *Najarian v. Charlotte Russe, Inc.*, 2007 U.S. Dist. LEXIS 95606 (C.D. Cal. Aug. 16, 2007), which raised questions regarding willfulness of FACTA are distinguishable. In *Keller*, the court granted summary judgment for lack of evidence regarding willfulness where the defendant's software crashed and was restored by the company that sold the equipment and software, and the equipment started printing full card numbers after restoration. The court found no willfulness in the defendant's failure to realize that its receipts were noncompliant with FACTA's truncation requirements for six weeks after restoration. The defendant had attempted to be FACTA-compliant with its software but a malfunction occurred.

17

*Najarian* also involved a merchant's attempt to comply with FACTA and California law by requesting its hardware and software vendor to truncate the credit card number and the expiration date, but the modification implemented by the vendor did not truncate the expiration date. Again, the defendant attempted to comply with the law but did not realize at first that the modification was insufficient to do so. Here, to the contrary, Sogro can be seen as recklessly disregarding any responsibility for FACTA compliance whatsoever for over a year.

B.  Armes's Motion for Summary Judgment

Armes contends that summary judgment in his favor is warranted because "feigned ignorance is not a defense." (Doc. 80 at 7.) According to Armes, Sogro's continued ignorance of the numerous notices sent to it as well as its legal obligations constituted willful violation of FACTA.

However, summary judgment must be denied to Armes as well. Construing the evidence in the light most favorable to Sogro, Solus did not know about the truncation requirements or have reason to know. Taking the evidence in the light favorable to Sogro, Paymentech's mailing to "certain merchants" did not go out to him, he did not receive most notices Paymentech or WHLA distributed, and the notices from Discover about new rules being available may not have prompted Solus to inquire further. Moreover, even if Solus did receive some of the notices and publications discussing truncation, a reasonable jury could find that he was merely careless and did not act recklessly, i.e., he did not run an unjustifiably high risk of harm that was so obvious that it should have been known. *See, e.g., Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,* No. 08 C 2259, 2011 U.S. Dist. LEXIS 97058 (N.D. Ill. Aug. 30, 2011) (denying

18

summary judgment because a factual question existed as to whether Defendant's actions were negligent or reckless); *Hammer v. JP's Sw. Foods, L.L.C.*, 739 F. Supp. 2d 1155, 1166-68 (W.D. Mo. 2010) (denying summary judgment because questions of material fact existed as to whether defendant's owner was aware of the FACTA requirements despite nine notices from its credit card processing company and alerts from customers).

CONCLUSION

For the foregoing reasons,

IT IS ORDERED Sogro's motion for summary judgment (Doc. 69) and Armes's motion for summary judgment (Doc. 79) are both denied.

IT IS FURTHER ORDERED that a scheduling conference is set for April 9, 2013, at 11:00 AM in Courtroom 222, at which time the court will schedule final pretrial conference and trial dates.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE